[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bunch*, Slip Opinion No. 2022-Ohio-4723.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4723

THE STATE OF OHIO, APPELLEE, *v*. BUNCH, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bunch*, Slip Opinion No. 2022-Ohio-4723.]**

*Criminal law—R.C. 2953.21—Postconviction-relief petitions—Evidentiary hearing—Ineffective assistance of counsel—Eyewitness-identification expert testimony—When core of a defendant's claim or defense turns on evidence that cannot be properly provided to jury without use of expert testimony, failure to engage experts can constitute deficient performance— Petitioner's affidavit from eyewitness-identification expert provided sufficient operative facts to warrant evidentiary hearing regarding petitioner's claim that he was prejudiced as a result of trial counsel's deficient performance—Court of appeals' judgment reversed and cause remanded to trial court for evidentiary hearing.*

(No. 2021-0579—Submitted April 12, 2022—Decided December 29, 2022.)

APPEAL from the Court of Appeals for Mahoning County,

No. 18 MA 0022, 2021-Ohio-1244.

_____

**DONNELLY, J.**

{¶ 1} In 2002, appellant, Chaz Bunch, was convicted of three counts of rape, three counts of complicity to rape, aggravated robbery, kidnapping, aggravated menacing, and several related firearm specifications. The key issue for Bunch at trial was whether he was the person who committed these crimes. Bunch maintained that he had been misidentified as the perpetrator.

{¶ 2} Bunch filed a petition for postconviction relief in 2003, which he later amended in 2017. Among his claims, Bunch asserted that his trial counsel had been ineffective for failing to present expert testimony to help the jury understand the unreliability of eyewitness identification, particularly under the circumstances in which the victim, M.K., identified Bunch. The trial court rejected the claim without holding a hearing, and the Seventh District Court of Appeals affirmed the trial court's judgment.

{¶ 3} We conclude that Bunch's ineffective-assistance claim presented an issue that the trial court needed to examine at an evidentiary hearing before reaching its decision. We therefore reverse the court of appeals' judgment and remand the cause to the trial court to conduct an evidentiary hearing on the eyewitness-identification claim in Bunch's petition for postconviction relief.

## BACKGROUND

{¶ 4} On August 21, 2001, at 10:23 p.m., M.K. was about to go into her workplace in Youngstown when she was kidnapped from off the street, robbed, and repeatedly raped by a group of strangers. M.K. reported the crime immediately afterward and provided the police with the license-plate number of the attackers' car. At 11:30 p.m., a Youngstown police officer saw a car at a gas station with a license-plate number that was nearly identical to the number reported. Video-surveillance footage from the gas station showed that a young man with Bunch's features—a stocky build and dark complexion—was at the gas station at the same

time as the suspicious car. Once the car exited the gas station, the officer began following it and then awaited backup after the car parked in a residential driveway. Police then apprehended three young men who were in the car: 15-year-old Brandon Moore, 18-year-old Andre Bundy, and 21-year-old Jamar Callier. A fourth person fled the vehicle on foot. Moore and Callier identified that person as "Shorty Mack."

{¶ 5} Shortly before midnight, a police officer spotted a young man hurrying down a nearby street, and the officer stopped the young man to speak with him. The person gave the name "Chaz Bunch," and he untruthfully claimed that he was in the area because he had just stopped by his uncle's house and was now on his way to visit his cousin. The officer did not detain the young man and did not write up any report that day regarding the interaction. Three days later, the officer was informed that Chaz Bunch was suspected of being the person who had fled from the police the night of the attack. The officer wrote a belated report about their previous interaction. The officer confirmed the young man's identity approximately one week later, when a detective showed him a picture of Bunch. Bunch was arrested on August 27.

{¶ 6} M.K. reviewed photo lineups of potential suspects on August 28. She quickly and confidently identified Moore, Bundy, and Callier, but not the fourth suspect. When reviewing the lineup that included Bunch's picture, M.K. stated that the photo of Bunch might be the fourth attacker, but she was not sure. She said that she wanted to see a full-body photo, explaining that this attacker was in the backseat and she "needed to see like his hands and roundness of his body." Police did not, however, provide M.K. with any additional photo lineups. On September 7, M.K.'s boyfriend showed her a newspaper article that identified Bunch as a suspect. When M.K. saw the picture of Bunch in the newspaper, she was certain that he was the fourth attacker.

{¶ 7} Of all the testing of fingerprints and DNA samples collected from

M.K., the car, and other items, none of the results were attributable to Bunch. Tests of samples from a rape kit and M.K.'s clothing detected Moore's DNA.

{¶ 8} The state's case against Bunch started in the juvenile court, as Bunch was 16 years old at the time of the offenses. Because of Bunch's age and the nature of the offenses, he was subject to mandatory bindover to adult court without an amenability hearing after the juvenile court made its probable-cause determination. Bunch, Bundy, and Moore were tried jointly over their objections. Callier pleaded guilty prior to trial and agreed to testify against his codefendants.

{¶ 9} Bunch's first attorney vigorously contested the validity of M.K.'s identification of Bunch during the juvenile court's probable-cause proceedings as well as in a motion to suppress identification testimony and subsequent hearing at the trial court. The first attorney also filed a motion for funds to hire an expert witness regarding eyewitness identification; the trial court granted the motion. However, that attorney withdrew from representation shortly after Bunch's suppression hearing because of a breakdown in the attorney-client relationship. The trial court denied the suppression motion on April 17, 2002.

{¶ 10} Despite the first attorney's setting up the opportunity, the second attorney appointed to defend Bunch did not engage any experts for trial. The second attorney also trod lightly around the issue of Bunch's identification at trial. During defense counsel's cross-examination of M.K., he hinted that by the time of trial, her memory about the entire event might have faded similarly to the attorney's memory of vocabulary from Spanish class in high school. He pointed out that M.K. had been uncertain at points about details such as the color and size of the guns that some of the defendants had carried. He vaguely suggested that perhaps those uncertainties arose because of the trauma she had suffered. He then asked M.K. to confirm her observations about the fourth attacker's physical attributes and clothing. He asked her to confirm her process of identifying Bunch, her initial uncertainty with the photo array, and her later certainty after seeing Bunch's photo

4

in the newspaper.

{¶ 11} Callier confirmed Bunch's identity in his testimony as a witness for the state. Callier indicated that he knew who Bunch was because he had "seen [him] around" for a few months. Callier acknowledged that he faced up to a 76-year sentence for his participation in the offenses against M.K. and that he had agreed to testify in exchange for the state's reduction of charges and recommendation of a seven-year prison term. The state also promised that it would not prosecute Callier for additional crimes, including a robbery that occurred approximately 30 minutes before M.K. was kidnapped.

{¶ 12} In October 2002, a jury found Bunch guilty on most counts, and the trial court imposed an aggregate prison term of 115 years. After the Seventh District reversed and remanded Bunch's sentence due to the failure to properly merge the firearm specifications, the trial court resentenced Bunch to an aggregate prison term of 89 years. In June 2003, Bunch filed a petition for postconviction relief in which he alleged ineffective assistance of counsel. The state did not respond to the petition, and it remained unresolved on the court's docket for over a decade. Bunch made additional attempts to challenge his sentence and reopen his appeal, which proved unsuccessful.

{¶ 13} In 2014, with the help of the Ohio Innocence Project, Bunch applied for DNA testing on the rape kit and other items, including a blue cap that Bunch allegedly wore that night, that had been preserved from the August 21, 2001 offenses. Bunch argued that current, more sophisticated DNA testing procedures might achieve better results from the samples. Because Bunch was the only one among the four codefendants who claimed that he was innocent based on misidentification, he contended that the detection of a fifth, unidentified male DNA profile would be exculpatory evidence that would have changed the outcome of his trial. The trial court denied Bunch's application, holding that DNA testing could not be exculpatory because the DNA evidence at trial did not identify Bunch. The

Seventh District affirmed, *State v. Bunch*, 7th Dist. Mahoning No. 14 MA 168, 2015-Ohio-4151, ¶ 101, noting that there was other evidence to support Bunch's convictions and hypothesizing that a fifth profile could end up matching M.K.'s boyfriend, *id*. at ¶ 78.

{¶ 14} In 2017, Bunch filed an amended postconviction petition.[1]  The amended petition asserted that Bunch had a right to be resentenced pursuant to a recent decision of this court regarding one of his codefendants, *see State v. Moore*, 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127.  It also claimed that Bunch's bindover proceedings were invalid under another recent decision, *State v. Aalim*, 150 Ohio St.3d 463, 2016-Ohio-8278, 83 N.E.3d 862 ("*Aalim I*"), *vacated on reconsideration*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883 ("*Aalim II*").  And lastly, Bunch's amended petition asserted that trial counsel had been ineffective for failing to procure an eyewitness-identification expert to analyze Bunch's case and testify at trial.  Bunch stated during briefing that his trial counsel had since received a stayed suspension from the practice of law for neglecting a criminal matter in 2003 and 2004—shortly after the attorney had represented Bunch at trial.  After being disciplined multiple times for neglecting cases and other matters, the attorney was indefinitely suspended from the practice of law in 2016.  To support his ineffective-assistance claim, Bunch attached an affidavit from Dr. Scott Gronlund, an expert in the field of eyewitness identification.

{¶ 15} Gronlund averred that M.K.'s identification of Bunch was not likely to be accurate.  Gronlund explained that when a witness is first asked to identify a perpetrator among a group of suspects, a high-confidence identification at that initial test of memory is very likely to be accurate.  But when a witness is not confident about identification, any selection made at that time is far less likely to

---

1. Because the state did not file an answer or motion in response to Bunch's 2003 petition, Bunch was permitted by statute to "amend the petition with or without leave or prejudice to the proceedings."  R.C. 2953.21(G)(2).

be accurate.  Gronlund also explained that it has been well known for decades that any identification of a perpetrator after an initial attempt tends to be unreliable:

> The very act of remembering changes memory, which is one reason why it is not possible to get an uncontaminated memory report from an eyewitness more than once.  * * *  Our memory system is not good at keeping track of WHY something is familiar.  We typically only weakly encode the source of a memory (did I read about this event, see it myself, or did you tell me about it?) because the source is seldom important.  Consequently, witnesses can have difficulty determining why a person or a photograph looks familiar.  Eyewitnesses may not realize that an individual can look familiar due to a previous exposure (from a photo in the newspaper) rather than from having seen the individual commit the crime.  This phenomenon is called unconscious transference * * *. The "flash of recognition" that occurred to the victim upon seeing the suspect's photo in the newspaper did not represent an independent test of her memory for the rapist.  Instead, it is likely that the victim matched her memory for the lineup photo of Bunch to the photo of Bunch in the newspaper, and not to her memory for the rapist.  There is no doubt that the lineup photo and the newspaper photo are the same person; but, of course, that is not the relevant question.  The relevant question is, was Bunch one of the rapists?  As a result of the initial test, the lineup photo of Bunch has become the face of the rapist.

Gronlund concluded that M.K.'s inability to provide a confident identification of the fourth perpetrator rendered her choice more likely to be inaccurate.  He further concluded that M.K.'s later identification of Bunch was "likely a product of

suggestion and inference, and therefore more prejudicial than probative." Gronlund explained that "[t]he identification of the suspect from the newspaper photo does not represent an independent test of the victim's memory, but rather likely arose from unconscious transference. Research shows that the confidence reported in a subsequent identification attempt is poorly diagnostic of accuracy."

{¶ 16} The state conceded that Bunch was entitled to a new sentencing hearing under *Moore* but contested the remainder of Bunch's petition. The state filed what it styled a motion for judgment on the pleadings pursuant to Civ.R. 12(C), in which it requested dismissal under the standards governing postconviction petitions in R.C. 2953.21. The state filed a proposed judgment entry for its own motion, which the trial court adopted verbatim in an entry issued the next business day.

{¶ 17} The entry held that Bunch's bindover claim under *Aalim I* was no longer viable, as *Aalim I* had since been reconsidered and vacated in *Aalim II*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883. The entry rejected Bunch's ineffective-assistance claim, holding that "an eyewitness identification expert would not have altered the trial's outcome," because Callier's testimony corroborated M.K.'s identification of Bunch. The entry also held that an attorney's failure to use an expert witness and instead rely on cross-examination does not constitute ineffective assistance of counsel as a matter of law.

{¶ 18} Bunch filed a notice of appeal in the Seventh District, which remanded the case in part for resentencing. A new trial judge presided over Bunch's third sentencing hearing and ultimately imposed an aggregate prison term of 49 years. The trial court also classified Bunch as a sexual predator under the standards of Megan's Law. Bunch then amended his appeal to the Seventh District to include arguments regarding the sentencing and sex-offender-classification decisions. The Seventh District affirmed the trial court's judgments in full. 2021-Ohio-1244.

**{¶ 19}** In rejecting the claim of ineffective assistance of trial counsel, the appellate court held Bunch to the standard established in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Seventh District held that the decision to rebut eyewitness testimony through cross-examination rather than an expert witness is a matter of trial strategy and does not constitute ineffective assistance of counsel. 2021-Ohio-1244 at ¶ 24. The court further held that Bunch's ineffectiveness claim failed because M.K.'s testimony was not the sole evidence of Bunch's identity. *Id*. at ¶ 25.

**{¶ 20}** Bunch sought our discretionary review of the Seventh District's decision. We accepted the appeal on the following propositions of law:

I. Trial courts should not deny a hearing on a postconviction petition based on a blanket rule that it is automatically a reasonable strategic decision to rely on cross-examination alone instead of consulting with and calling an expert witness.

II. A child cannot be transferred to adult court without a finding that they are not amenable to treatment in juvenile court.

III. When making a sexual predator finding, it is reversible error for the trial court to fail to state that it is holding the hearing pursuant to R.C. 2950.09(B).

IV. The trial court erred when it sentenced Chaz Bunch because the findings supporting consecutive sentences are clearly and convincingly not supported by the record and the sentence is contrary to law.

*See* 163 Ohio St.3d 1501, 2021-Ohio-2307, 170 N.E.3d 889. Amici curiae Innocence Project, Inc., and Ohio Innocence Project filed a brief in support of

Bunch's first proposition of law. Numerous other amici curiae filed briefs in support of or in opposition to Bunch's second proposition of law.

{¶ 21} We find merit to Bunch's first proposition of law, and we reverse the judgment of the court of appeals on those grounds. Based on our disposition, we find it premature to address Bunch's third and fourth propositions of law at this time. If the arguments in the third and fourth propositions of law remain relevant after the proceedings on remand, the parties may present those arguments to us in any ensuing appeal. Finally, given the unique and protracted procedural history in this case, we conclude that Bunch's appeal is not a suitable vehicle for reviewing procedures related to juvenile amenability. We therefore decline to address Bunch's second proposition of law, and we dismiss the proposition as having been improvidently accepted.

## ANALYSIS

{¶ 22} We begin by emphasizing that Bunch's first proposition of law focuses on the standard for holding a hearing on a postconviction petition, not the standard for ultimately granting relief on the petition. We are also mindful that although the proceedings on Bunch's amended postconviction petition took place long after his conviction, his filing of the petition in 2003 was timely and therefore subject to the standards of R.C. 2953.21 rather than to the stringent standards of R.C. 2953.23 for untimely or successive petitions.

### *Legal Standards*

{¶ 23} In order to grant a hearing on a timely postconviction petition, the trial court must "determine whether there are substantive grounds for relief." R.C. 2953.21(D). If the petition "is sufficient on its face to raise an issue that the petitioner's conviction is void or voidable on constitutional grounds, and the claim is one which depends upon factual allegations that cannot be determined by examination of the files and records of the case, the petition states a substantive ground for relief." *State v. Milanovich*, 42 Ohio St.2d 46, 325 N.E.2d 540 (1975),

paragraph one of the syllabus.

{¶ 24} In determining whether the petition states a substantive ground for relief, the trial court must consider the entirety of the record from the trial proceedings as well as any evidence filed by the parties in postconviction proceedings. R.C. 2953.21(D). If the record on its face demonstrates that the petitioner is not entitled to relief, then the trial court must dismiss the petition. R.C. 2953.21(D) and (E). If the record does not on its face disprove the petitioner's claim, then the court is required to "proceed to a prompt hearing on the issues." R.C. 2953.21(F); *see also State v. Hatton*, ___ Ohio St.3d ___, 2022-Ohio-3991, ___ N.E.3d ___, ¶ 28 ("The defendant is entitled to an evidentiary hearing when the allegations in the motion demonstrate substantive grounds for relief").

{¶ 25} A trial court's decision to grant or deny a petition for postconviction relief after an evidentiary hearing is reviewed for an abuse of discretion. *State v. White*, 118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905, ¶ 45. Applying the wrong legal standard in a postconviction proceeding is also reversible error under an abuse-of-discretion standard. *Hatton* at ¶ 29.

{¶ 26} To establish that trial counsel was ineffective, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Regarding the prejudice prong, the defendant must prove that there is a "reasonable probability" that counsel's deficiency affected the outcome of the defendant's proceedings. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

{¶ 27} In this matter, we examine Bunch's ineffective-assistance claim as it relates to a decision whether to grant a hearing on a postconviction petition rather

than as it affects a decision on the merits of an appeal or on the merits of the postconviction petition. Thus, Bunch's postconviction petition need not definitively establish counsel's deficiency or whether Bunch was prejudiced by it. Instead, the petition must be sufficient on its face to raise an issue whether Bunch was deprived of the effective assistance of counsel, and Bunch's claim depends on factual allegations that cannot be determined by examining the record from his trial, *see Milanovich*, 42 Ohio St.2d 46, 325 N.E.2d 540, at paragraph one of the syllabus; *see also State v. Cole*, 2 Ohio St.3d 112, 114, 443 N.E.2d 169 (1982) (to merit a hearing on a postconviction ineffective-assistance claim, a petitioner must proffer evidence outside the record that if true, would show that counsel was ineffective).

### The Courts Below Employed Incorrect Standards

{¶ 28} The trial court's entry dismissing Bunch's postconviction petition made no mention of Bunch's allegation that his trial counsel's failure to use an expert witness was unreasonable in the specific context of his case.[2] Instead, it concluded that counsel's actions were not subject to a finding of ineffective assistance according to this court's reasoning in *State v. Nicholas*, 66 Ohio St.3d 431, 613 N.E.2d 225 (1993) and *State v. Hartman*, 93 Ohio St.3d 274, 754 N.E.2d 1150 (2001). It further concluded that because Callier identified Bunch in his testimony, the expert testimony "would not have altered the trial's outcome." The appellate court, citing *Nicholas*, *State v. Thompson*, 33 Ohio St.3d 1, 514 N.E.2d 407 (1987), and *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, likewise presumed that trial counsel's decisions were strategic and not subject

---

2. The trial court's verbatim adoption of the state's proposed findings of fact and conclusions of law, in an entry journalized the next business day after the state's filing, is not in and of itself erroneous. The timing and form of the entry does, however, make it appear less likely that the court actually considered the entirety of the trial record and the matters filed by the parties pursuant to R.C. 2953.21(D). The United States Supreme Court has criticized the practice of adopting a prevailing party's proposed findings of fact and conclusions of law verbatim, and it has implied that the practice might be suspect in certain postconviction scenarios. *Jefferson v. Upton*, 560 U.S. 284, 294, 130 S.Ct. 2217, 176 L.Ed.2d 1032 (2010).

to a finding of ineffective assistance. The appellate court held Bunch to the standard of proving that "the outcome of the proceedings would have been different but for counsel's deficient performance." 2021-Ohio-1244 at ¶ 23.

{¶ 29} Both courts failed to apply the proper standard for reviewing whether a hearing was required on Bunch's postconviction ineffective-assistance claim and instead treated Bunch's claim as one on the merits in a direct appeal. Both courts also erroneously relied on the standard regarding the presumption of sound trial strategy articulated in *Nicholas*, *Thompson*, *Hartman*, and *Foust*. The factual context and the procedural posture of each of these four decisions render them inapposite, and thus they do not control the resolution of Bunch's claim.

{¶ 30} The defendant in *Nicholas* argued on direct appeal that his counsel was ineffective for failing to have a DNA expert testify and failing to object to the admission of DNA evidence at Nicholas's rape trial. Trial counsel had hired a DNA expert, but with Nicholas's consent, counsel did not have the expert testify and instead cross-examined the state's DNA experts. This court noted its recent decision holding that DNA evidence is scientifically reliable and therefore admissible. *Nicholas* at 436-437, citing *State v. Pierce*, 64 Ohio St.3d 490, 501, 597 N.E.2d 107 (1992). It was clear from the record that trial counsel chose not to call the DNA expert to testify as a matter of trial strategy. This court therefore held that it could not second guess such strategy.

{¶ 31} In the direct appeal following a conviction for aggravated murder with a rape specification in a death-penalty proceeding, the defendant in *Thompson* argued that his trial counsel were ineffective for failing to have an expert witness testify to rebut the state's expert testimony regarding the physical evidence of rape. This court held that in light of the circumstances of the trial, Thompson did not overcome the presumption that counsel used sound trial strategy and that he did not identify any errors that were so serious that the result of his trial was rendered unreliable. *Thompson*, 33 Ohio St.3d at 10-11, 514 N.E.2d 407.

**{¶ 32}** The defendant in *Hartman* argued in his direct appeal from a death-penalty conviction that his trial counsel was ineffective for failing to engage a DNA expert to test semen samples taken from the victim. The state did not test the semen because Hartman had admitted to having sex with the victim on the same day that she was killed. This court held that counsel's decision not to engage an expert could be considered strategy because the potential results of separate DNA testing were speculative and could have been inculpatory. *Hartman*, 93 Ohio St.3d at 299, 754 N.E.2d 1150.

**{¶ 33}** The defendant in *Foust* argued in his direct appeal from a death-penalty conviction that his trial counsel was ineffective for failing to hire a DNA expert to refute the reliability of the state's DNA evidence. This court held that defense counsel's decision to cross-examine the state's DNA expert instead of calling his own expert was a legitimate tactical decision because the potential results of separate testing were speculative and could have been inculpatory. *Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, at ¶ 97-98. Foust's argument also appeared meritless on its face. Foust asserted that expert testimony was crucial to his claim that he did not hit the victim with a hammer, but he had confessed to picking up "something" and hitting the victim with it, and the circular fracture on the victim's skull was consistent with being hit with a hammer. *Id.* at ¶ 95-96.

**{¶ 34}** Each one of these cases involves a trial counsel's choice between eliciting expert testimony through the cross-examination of the state's expert witness or eliciting expert testimony by presenting a defense expert. Such a choice was not available in Bunch's case. The only way for Bunch's counsel to present expert testimony to the jury regarding the psychology behind eyewitness identification would have been through an expert for the defense. Counsel's cross-examination of M.K. could not have elicited the kind of evidence that would come from the direct or cross-examination of an expert witness.

{¶ 35} Moreover, each of the above four cases involved a direct appeal. We have repeatedly held that direct appeals are not the appropriate place to consider allegations of ineffective assistance of trial counsel that turn on information that is outside the record. *See Hartman*, 93 Ohio St.3d at 299, 754 N.E.2d 1150; *State v. Madrigal*, 87 Ohio St.3d 378, 391, 721 N.E.2d 52 (2000); *State v. Keith*, 79 Ohio St.3d 514, 536, 684 N.E.2d 47 (1997); *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 75. Because we cannot consider information outside the record in a direct appeal, we must often conclude that a defendant's claims are speculative. *Hartman* at 299; *Foust* at ¶ 98. And speculation alone cannot overcome "the 'strong presumption' that counsel's performance constituted reasonable assistance." *Foust* at ¶ 89, quoting *State v. Bradley*, 42 Ohio St.3d 136, 144, 538 N.E.2d 373 (1989).

{¶ 36} The inability to consider evidence outside the record in a direct appeal is what led to our holding that "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel," *Nicholas*, 66 Ohio St.3d at 436, 613 N.E.2d 225; *see also Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, at ¶ 97; *Hartman* at 299. Our holding in *Nicholas* and its ilk, though broadly worded, is not applicable to postconviction claims of ineffective assistance of counsel, where courts have the ability to consider evidence outside the record and are not limited to mere speculation. In the present context of postconviction litigation, it is possible and appropriate to question whether a trial counsel's decisions were in fact deliberate and strategic and whether strategic decisions were reasonable ones. Trial strategy is usually within the "wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674, but strategy is not synonymous with reasonableness.

### Bunch's Claim Must Be Tested at a Hearing

{¶ 37} Under the ineffective-assistance standard in *Strickland* and the postconviction-hearing standard articulated in *Milanovich*, Bunch was required to

raise in his petition a triable issue of fact, supported by evidence outside the record, whether his trial counsel was deficient and whether that deficiency prejudiced him. Bunch's evidence, if true, must show that trial counsel's actions were not reasonable "under prevailing professional norms," *Strickland* at 688, and that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt," *id.* at 695; *see also Hinton v. Alabama*, 571 U.S. 263, 275, 134 S.Ct. 1081, 188 L.Ed.2d 1 (2014).

{¶ 38} Bunch asserts that because eyewitness identification was the core of the state's case against him, the use of an expert regarding eyewitness identification was the only reasonable strategy to support his defense. He argues that Dr. Gronlund's proposed expert testimony regarding the shortcomings of human memory in the context of suspect-identification processes, as well as his opinion that M.K.'s identification of Bunch was unreliable and not likely to be accurate, is adequate to establish a reasonable probability that the jury would have had a reasonable doubt that Bunch was the fourth individual who participated in M.K.'s kidnapping, robbery, and rape.

{¶ 39} If counsel makes a strategic choice "after less than complete investigation," counsel's choice is "reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690-691, 104 S.Ct. 2052, 80 L.Ed.2d 674. Although rare, there are some instances in criminal cases when "the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence." *Harrington v. Richter*, 562 U.S. 86, 106, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

{¶ 40} When the core of the state's case against a defendant involves evidence that the jury cannot properly understand without the assistance of expert testimony, the failure to engage a competent expert can constitute deficient

performance. *Hinton*, 571 U.S. at 273, 134 S.Ct. 1081, 188 L.Ed.2d 1. And when the core of a defendant's claim or defense turns on evidence that cannot be properly provided to a jury without the use of expert testimony, the failure to engage experts can also constitute deficient performance. *State v. Herring*, 142 Ohio St.3d 165, 2014-Ohio-5228, 28 N.E.3d 1217.

**{¶ 41}** The defendant in *Hinton* was arrested in 1985 in connection with robberies at three restaurants. During two of the robberies, a manager was killed, while a manager survived being shot at the third restaurant. Two .38 caliber bullets were found at each restaurant. The surviving victim identified Hinton in a photo lineup. When Hinton was arrested, a .38 caliber gun was found in the house where he was living. Hinton was tried on two capital-murder charges. The state's case relied on expert testimony that the bullets found at the crime scenes were fired from the gun found at Hinton's house. Defense counsel hired the only firearm and toolmark expert that he could afford with the funds provided by the court. That expert was easily discredited by cross-examination at trial.

**{¶ 42}** Hinton argued in a postconviction petition that his counsel was ineffective for failing to seek additional funds to hire a competent expert. He proffered the testimony of different experts who indicated that the state's experts were likely incorrect in their assessments. Because the forensic evidence of the bullets was "the core of the prosecution's case," *Hinton* at 273, and because it was revealed *at a hearing* on the postconviction petition that trial counsel had failed to understand that he could request additional funds for an expert, the court concluded that counsel's performance had been deficient. After a remand, the state ultimately dismissed the case against Hinton. *Hinton v. State*, 172 So.3d 355, 362 (Ala.Crim.App.2014), Reporter's Note.

**{¶ 43}** In *Herring*, the defendant was convicted of complicity to commit aggravated murder, attempted aggravated murder, and course-of-conduct death-penalty specifications. All that defense counsel offered in mitigation was that

Herring had a good relationship with his mother and siblings, and that some of Herring's codefendants did not receive the death penalty. The state rebutted the latter point with evidence that the codefendants were juveniles or otherwise dissimilarly situated.

{¶ 44} In a postconviction petition that included affidavits from two psychologists, Herring argued that counsel was ineffective for failing to provide adequate mitigation evidence to help the jury understand the psychological and intellectual factors behind the petitioner's actions that led to the death-penalty conviction. The trial court summarily dismissed the petition, but the appellate court reversed, holding that an evidentiary hearing was necessary to determine whether counsel's failure to act was due to ignorance or due to a conscious strategic choice. *Herring*, 142 Ohio St.3d 165, 2014-Ohio-5228, 28 N.E.3d 1217, at ¶ 43. After further proceedings and appeals, this court determined that Herring's trial counsel's failure to gather adequate evidence, particularly the testimony of competent specialists in mitigation, was a result of inattention rather than strategy. *Id*. at ¶ 104. Accordingly, we held that counsel's performance was deficient. *Id*. at ¶ 111. This court further concluded that the evidence regarding Herring's social, psychological, and neurological history was significant enough that there was a reasonable probability that the result of his proceedings would have been different had the evidence been properly presented. *Id*. at ¶ 133-134.

{¶ 45} We conclude that Bunch's postconviction petition stated a substantive ground for relief. Bunch provided evidence that, if true, set out a prima facie case that he was deprived of his constitutional right to the effective assistance of counsel.

{¶ 46} If Bunch's allegations are true, counsel's failure to procure expert testimony, even though Bunch's previous counsel had obtained funds to do so, was unreasonable. According to the expert-witness testimony proffered in Bunch's petition, it has long been well known in the field of eyewitness identification that

any identification of a perpetrator after an initial attempt tends to be unreliable because it often involves unconscious transference. In order for the jury to properly understand the science and psychology behind eyewitness identification, including the concept of unconscious transference, the jury would need the assistance of expert testimony.

{¶ 47} The state did not present an expert to testify regarding eyewitness identification. Bunch's trial counsel therefore could not use cross-examination to elicit any relevant expert information about the subject. Nor could counsel cross-examine M.K. to elicit such testimony, and thus cross-examination in this context was not a reasonable substitute for presenting expert testimony during Bunch's case in chief. It was also a questionable choice for counsel to forgo using an unbiased expert to present a neutral perspective on the inherent fallibility of the human mind to rebut M.K.'s identification of Bunch and to instead attempt to delegitimize M.K.'s account of her own horrifying experience through cross-examination. Counsel's efforts did not prove successful in undermining M.K.'s memory; in fact, counsel's efforts significantly weakened Bunch's defense by giving M.K. the opportunity to reiterate how certain she was about her identification of Bunch.

{¶ 48} The only information that appears on the face of the record regarding counsel's decision-making process is that counsel failed to use an expert witness even though prior counsel's request for funds to pay for an expert had been granted. That information does not disprove Bunch's claim that counsel's actions were unreasonable. Considering the circumstances that led to evidentiary hearings on the postconviction petitions in *Hinton* and *Herring*, we conclude that an evidentiary hearing is necessary in this case to reach the merits regarding whether counsel's performance was deficient.

{¶ 49} Next, the expert-witness testimony proffered in Bunch's petition, if true, would establish that M.K.'s identification of Bunch was likely inaccurate. Use of the expert would have provided a reasonable opportunity to impeach the

eyewitness-identification testimony of M.K. and to offer a viable reason why, despite M.K.'s honest and sincere belief, the identification was incorrect. Because identity was the central issue to the state's case against Bunch, and because M.K.'s identification of Bunch was central to the identity issue, impeachment of her testimony would give rise to a reasonable probability that a factfinder would have a reasonable doubt about Bunch's guilt. *See Hinton*, 571 U.S. at 275, 134 S.Ct. 1081, 188 L.Ed.2d 1.

{¶ 50} Callier's testimony against Bunch in exchange for a significantly reduced sentence is relevant to the assessment of whether Bunch was prejudiced by his counsel's alleged deficient performance, but it does not detract from the fact that M.K.'s identification of Bunch was the core of the case against him. Callier's testimony does not disprove Bunch's claim that he was prejudiced by the failure to discredit M.K.'s eyewitness-identification testimony with expert-witness testimony. We conclude that Bunch provided sufficient operative facts to warrant an evidentiary hearing regarding his claim that he was prejudiced as a result of counsel's deficient performance.

{¶ 51} We express no opinion on whether Bunch's claims might have merit once they are aired out in an evidentiary hearing. Our focus in this decision is not on the merits of Bunch's claim; instead, it is on the adequacy of the process leading up to a decision on Bunch's claim. "[A]ssurance that the public is protected because the actual offender is behind bars depends on the confidence of the conviction," *State v. Scott*, ___ Ohio St.3d ___, 2022-Ohio-4277, ___ N.E.3d ___, ¶ 22, and thus the state should be just as interested as petitioners are in having hearings on legitimate challenges. The postconviction-petition process ensures the integrity of convictions that were correctly entered in addition to ferreting out wrongful convictions. A wrongful conviction achieves justice for no one, and a confirmation that a petitioner was rightfully convicted only adds to our confidence in the system.

**CONCLUSION**

**{¶ 52}** The trial court erred in failing to hold an evidentiary hearing before ruling on the ineffective-assistance claim in Bunch's postconviction petition, and the appellate court erred in affirming the trial court's judgment in that respect. Accordingly, we reverse the judgment of the Seventh District Court of Appeals on Bunch's first proposition of law, and we remand the cause to the trial court to proceed to an evidentiary hearing on Bunch's claim of ineffective assistance of counsel. As stated above, we decline to address Bunch's third and fourth propositions of law at this time, and we dismiss Bunch's second proposition of law as having been improvidently accepted.

Judgment reversed

and cause remanded to the trial court.

STEWART and BRUNNER, JJ., concur.

BEATTY BLUNT, J., concurs and would adopt proposition of law No. II as well as proposition of law No. I.

O'CONNOR, C.J., dissents.

KENNEDY, J., dissents, with an opinion joined by DEWINE, J.

LAUREL BEATTY BLUNT, J., of the Tenth District Court of Appeals, sitting for FISCHER, J.

_____

**KENNEDY, J., dissenting.**

**{¶ 53}** Appellant, Chaz Bunch, seeks postconviction relief. In the first stage of a postconviction-relief case, the trial court must decide whether a defendant will receive a hearing. In this gatekeeping role, a trial court can deny a petition for postconviction relief without an evidentiary hearing when the record does not demonstrate that the defendant has set forth "sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), paragraph two of the syllabus.

{¶ 54} Bunch alleges ineffective assistance of trial counsel as his substantive grounds for relief. To prove ineffectiveness, Bunch must demonstrate that the deficient performance of his defense counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove prejudice, Bunch must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

{¶ 55} Based on the record in this case, I would hold that the trial court did not err in determining that Bunch is not entitled to a hearing with respect to his claim of ineffective assistance of counsel. Therefore, I dissent.

*The supporting affidavit: Expert-eyewitness-identification testimony*

{¶ 56} Bunch argues that his counsel was ineffective because counsel should have hired an expert on eyewitness identification to test the reliability of the victim's identification of him. In support of his petition for postconviction relief, Bunch filed an affidavit from an expert on eyewitness identification, Dr. Scott D. Gronlund.

{¶ 57} Gronlund offers two premises regarding the quality of eyewitness testimony. First, a low-confidence initial identification by a witness signals increased likelihood of an inaccurate identification. Second, tests of memory that follow an initial test may be distorted by suggestion and inference and are therefore far more prejudicial than they are probative.

{¶ 58} In his evaluation of this case, Gronlund reviewed 5 pages of victim testimony from the trial, 81 pages of the transcript from a suppression hearing, and a document he referred to as "Report to the Ohio Court of Appeals." Gronlund concluded that M.K.'s initial identification of Bunch was a low-confidence identification, which is more likely to be inaccurate than a high-confidence identification. He also concluded that her second identification of Bunch, when she saw his picture in the newspaper, was "likely a product of suggestion and inference,

and therefore more prejudicial than probative." Gronlund opined that the second identification likely arose from unconscious transference. Therefore, in his opinion, M.K.'s identification of Bunch was not reliable. "Research shows that the confidence reported in a subsequent identification attempt is poorly diagnostic of accuracy," Gronlund wrote.

{¶ 59} Despite Gronlund's statement that research suggests that M.K.'s confidence in her second identification of Bunch by the newspaper photo is a poor metric of accuracy, his report does not demonstrate that the trial court erred in denying Bunch's petition for postconviction relief without a hearing. The trial court can dismiss a petition for postconviction relief without a hearing "where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that [the] petitioner set forth sufficient operative facts to establish substantive grounds for relief." *Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 279, at paragraph two of the syllabus. Therefore, the trial court was required to consider the record, which includes M.K.'s eyewitness testimony, other corroborating evidence, and the testimony of one of Bunch's codefendants, Jamar Callier.

*M.K.'s eyewitness testimony*

{¶ 60} At trial, M.K. testified that when she looked at a police photo lineup that included Bunch and five other individuals, she identified Bunch's picture as the one she was "drawn to." She told the detective that "if I had to sign this one, I would," but she did not fully commit to the identification because, in her words, "I wanted a body shot. I needed a body shot because he was in the back seat of the car, and he was shorter, and he was like rounder, and I needed to see like his hands and roundness of his body." In other words, M.K. wanted to see a photo lineup with fuller pictures. Police, however, were unable to put together a lineup with full-body shots for M.K.'s review, because they could not find enough people with the right body type.

{¶ 61} Several days later, however, M.K. saw a fuller picture of Bunch in the Youngstown Vindicator newspaper. She testified that she knew immediately that he was the assailant. M.K. explained, "And I wouldn't have been satisfied, and that's all—I kept asking Detective Shuster, 'Can I please see a body shot? Can I see a body shot?' And then when I saw it, I knew. And you just—you never forget a body when it's on top of you and you are forced."

{¶ 62} The contact between M.K. and Bunch during the kidnapping and rape was not brief. Bunch and one of his codefendants, Brandon Moore, got into her car with her, and they rode to the location of the rape. During that time, Bunch was issuing orders and threats to her. Upon arrival at the empty parking lot, Bunch and Moore raped M.K. repeatedly, orally and vaginally, and Bunch stuck his gun in her face and held it on her face near her mouth and threatened to kill her.

{¶ 63} Despite all the trauma she endured, M.K. was able to memorize the license-plate number of the other car involved in the attack and reported it to police. That led to the quick arrest of three of the assailants. In my view, the quality of M.K.'s testimony diminishes Gronlund's conclusions. And confidence in the accuracy of her identification increases significantly in light of the other corroborating evidence and testimony.

*Corroborating evidence and testimony*

{¶ 64} Roughly half an hour after the kidnapping and rape of M.K., a police officer spotted a vehicle at a gas station in town with a license plate that closely matched the number M.K. had provided. Bunch and one of his codefendants were captured on video surveillance inside the gas station. The officer pursued the car from the gas station until it stopped in the driveway of a house a short time later. Within minutes, Bunch was seen by another police officer "trotting" in the neighborhood where the driver had just parked the car and fled on foot, leaving the other three assailants behind. Bunch then knocked on the door of a stranger and asked the stranger to pretend that he was Bunch's uncle because police were after

him—supposedly for a curfew violation. Bunch then paid the man to use his phone to call a girlfriend and to drive Bunch to another neighborhood.

{¶ 65} M.K. testified that during the rape, Bunch argued with his codefendants that they should kill her. But Callier argued against it. Callier ended the attack when he pushed Bunch off M.K. Callier's testimony corroborated M.K.'s testimony, and Callier identified Bunch as one of the perpetrators who kidnapped and raped M.K. that night. Therefore, there was a second eyewitness who identified Bunch as the fourth assailant.

{¶ 66} In addition to M.K.'s testimony, then, the trial court could consider the eyewitness testimony of Callier, the evidence that Bunch was with the codefendants at the gas station soon after the attack, and the testimony of the stranger whom Bunch asked to lie to police, putting him in the neighborhood where the assailants were found and taken into custody.

*No proof of prejudice*

{¶ 67} In *Calhoun*, this court stated that "we have held that it is not unreasonable to require the defendant to show in his petition for postconviction relief that such errors resulted in prejudice before a hearing is scheduled." 86 Ohio St.3d at 283, 714 N.E.2d 905. As stated above, to satisfy the prejudice prong of an ineffective-assistance-of-counsel claim, Bunch must demonstrate a reasonable probability that but for counsel's alleged errors—here, the failure to hire an eyewitness-identification expert—the proceeding's result would have been different. *See State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, 123 N.E.3d 955, ¶ 118. In my view, in light of all the evidence of Bunch's involvement in the kidnapping and rape of M.K., the trial court did not err in rejecting Bunch's ineffective-assistance argument. There is not a reasonable probability that Bunch's trial would have ended differently had his attorney hired an eyewitness-identification expert. And "[a] defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." *State v. Madrigal*, 87

Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 68} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that Bunch set forth sufficient operative facts to establish substantive grounds for relief. Gronlund's affidavit effectively sets forth his theories about eyewitness testimony, but those theories do not overcome the evidence before the trial court in this case.

*Conclusion*

{¶ 69} Bunch claims that his counsel was constitutionally ineffective because of counsel's failure to hire an expert on eyewitness identification to cast doubt upon M.K.'s identification of Bunch as one of the two assailants who raped her in August 2001. In my view, the trial court did not err in not holding a hearing on his petition for postconviction relief. The victim's testimony, the corroborating evidence, the testimony of one of Bunch's codefendants, and the record as a whole, including the affidavit signed by Bunch's expert, demonstrate that Bunch did not support his petition with sufficient operative facts to establish substantive grounds for relief.

{¶ 70} Furthermore, since the first proposition of law is not dispositive, I would address the remaining propositions of law. Therefore, I dissent.

DeWine, J., concurs in the foregoing opinion.

––––––––––––––––––

Paul J. Gains, Mahoning County Prosecuting Attorney, and Ralph M. Rivera and Edward A. Czopur, Assistant Prosecuting Attorneys, for appellee.

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick and Charlyn Bohland, Assistant Public Defenders, for appellant.

Dave Yost, Attorney General, and Samuel C. Peterson, Deputy Solicitor General, urging affirmance on behalf of amicus curiae Ohio Attorney General.

Anton Robinson and Lauren Gottesman, urging reversal on behalf of amicus curiae Innocence Project, Inc.

Mark A. Godsey and Donald Caster, urging reversal on behalf of amicus curiae Ohio Innocence Project.

Marsha L. Levick, in support of appellant's second proposition of law, for amicus curiae Juvenile Law Center.

Leah R. Winsberg, in support of appellant's second proposition of law, for amici curiae Children's Law Center and Rutgers Center on Criminal Justice, Youth Rights, and Race.

Kristina Kersey and Amanda J. Powell, in support of appellant's second proposition of law, for amicus curiae National Juvenile Defender Center.

Yeura Venters, Franklin County Public Defender, and Timothy E. Pierce, Appellate Division Chief, in support of appellant's second proposition of law, for amicus curiae Franklin County Public Defender.

H. Louis Sirkin, in support of appellant's second proposition of law, for amicus curiae Association for Public Defense.

Cullen Sweeney, Cuyahoga County Public Defender, and Erika B. Cunliffe, Assistant Public Defender, in support of appellant's second proposition of law, for amicus curiae Cuyahoga County Public Defender.

Raymond T. Faller, Hamilton County Public Defender, and Jessica Moss, Juvenile Appellate Trial Counsel, in support of appellant's second proposition of law, for amicus curiae Hamilton County Public Defender.

Theresa Haire, Montgomery County Public Defender, and Kay Locke, Assistant Public Defender, in support of appellant's second proposition of law, for amicus curiae Montgomery County Public Defender.

Kimberly P. Jordan, in support of appellant's second proposition of law, for amicus curiae Justice for Children Project.

_____