**[Cite as *State v. Carswell*, 2025-Ohio-4568.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                          Court of Appeals No. {72}S-24-006

      Appellee                                    Trial Court No.  19 CR 070

v.

Andrew Carswell                            **DECISION AND JUDGMENT**

      Appellant                                   Decided:  September 30, 2025

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Laura E. Alkire, Assistant Prosecuting Attorney, for appellee.

Michael H. Stahl, for appellant.

* * * * *

**SULEK, P.J.**

{¶ 1} Appellant Andrew Carswell appeals the judgment of the Sandusky County

Court of Common Pleas, which denied his petition for postconviction relief following an

evidentiary hearing.  For the reasons that follow, the trial court's judgment is affirmed.

**I. Factual Background and Procedural History**

{¶ 2} This appeal represents the third time this matter has been before this court.

{¶ 3} On January 18, 2019, the Sandusky County Grand Jury indicted Carswell on one count of rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree; two counts of gross sexual imposition in violation of R.C. 2907.05(B), felonies of the third degree; and one count of importuning in violation of R.C. 2907.07, a felony of the third degree. The charges stemmed from allegations that Carswell touched the genitals of a seven-year-old female relative on two separate occasions: once in October 2018, and once in November 2018.

{¶ 4} At the trial, the victim, L.Y., testified that she and Carswell were alone in the basement watching a movie on Thanksgiving night when Carswell asked her to change into a nightgown so he could give her a massage. L.Y. described how Carswell touched and penetrated her vagina with his finger. He pulled his underwear down and exposed his genitals. He was breathing heavily, alternately licking his finger, touching his penis, and touching L.Y.'s vagina. He then asked L.Y. to kiss his penis, and she refused. The incident ended when L.Y. asked to get a snack.

{¶ 5} L.Y. went upstairs and told her ten-year-old sister. L.Y. was scared because she "pinky promised" not to tell and because Carswell had threatened to put guns and knives in her Christmas presents if she did. The sisters decided to tell their adult cousin A.R., who was asleep in a different room. A.R. testified that the girls rushed into her room and told her something bad happened. L.Y. cried as she recounted her story to A.R. A.R. then summoned L.Y.'s mother and told her about the situation. L.Y.'s mother immediately reported the incident to the police.

2.

{¶ 6} At the scene, the police interviewed Carswell. He told the police that while he was spooning with L.Y. alone in the basement, he had a vivid dream that he was rubbing his wife's vagina. He admitted that touching may have been possible, but he did not remember it occurring.

{¶ 7} The next day, L.Y. received a sexual assault examination. There were no physical findings as a result of the exam, but the Sexual Assault Nurse Examiner testified that this was consistent with the facts that L.Y. disclosed.

{¶ 8} Lindsey Nelsen-Rausch, a forensic scientist with the Ohio Bureau of Criminal Investigation ("BCI") testified that samples from L.Y.'s perianal area contained male DNA that was uninterpretable because the sample was "just not enough." Samples from L.Y.'s underwear, including from the interior back panel, interior crotch, interior front panel, exterior back panel, and exterior front panel to mid-crotch, all had DNA consistent with Carswell. A swab from the interior front panel contained additional DNA that was uninterpretable, even as to gender, because there was not enough of it to make a comparison. Specifically, Nelsen-Rausch testified,

> A. That profile was a mixture that had two major contributors; one was consistent with [L.Y.]; the other was consistent with Andrew Carswell, and then there was additional data not suitable for comparison.
>
> Q. So it could have been – Andrew could have been [L.Y.], but we don't know; it could have been a random DNA?
>
> A. The additional data is not from [L.Y.] or from Andrew, because DNA profile is consistent with them already on that sample, but I can't make any determination where that additional data comes from.

3.

Q. All right. Did you characterize that additional data as uninterpretable?

A. Additional data not interpretable is what my report says.

Q. Okay. In other words, you can't make a conclusion about that?

A. Correct.

Q. Oka. Even – even to the gender of the contributor?

A. Not on this sample, no, because I already have a male contributor to the sample so I can't tell if the additional data is from a different male or not.

{¶ 9} On cross-examination, responding to a hypothetical situation where someone touched a railing and a different person sat on it, Nelsen-Rausch testified that it is possible that the first person's DNA could be transferred to the second person's clothes. On redirect, however, she testified that she would not expect the first person's DNA to be on the inside of the clothes. Defense counsel then questioned whether the DNA could have transferred to the inside of the clothes when it was saturated during the DNA extraction process. Nelsen-Rausch replied that she only uses a couple of drops of liquid on a Q-tip, and she does not aggressively swab the sample, so, in her words, "I don't think that you would be pulling DNA from the outside on these inside samples, but I guess – I can't know for sure. . . . I would think it's unlikely that you're pulling significant amounts of DNA, but off the top my head, I – I couldn't tell you for sure."

{¶ 10} Following the trial, the jury found Carswell guilty of the count of rape, one count of gross sexual imposition, and the count of importuning, all of which arose from the November 2018 incident. The jury found Carswell not guilty of the second count of

4.

gross sexual imposition, which was based on the October 2018 incident, and for which no DNA evidence was presented. The trial court sentenced him to a cumulative prison sentence of 18 years to life.

{¶ 11} Carswell appealed his convictions, and this court affirmed in *State v. Carswell*, 2021-Ohio-3379 (6th Dist.). Subsequently, Carswell filed a postconviction petition pursuant to R.C. 2953.21, in which he asserted ten causes of action. The trial court denied his petition without a hearing. In *State v. Carswell*, 2023-Ohio-4574 (6th Dist.), this court affirmed the trial court's judgment as to nine of the causes of action but reversed and remanded the matter for a hearing on Carswell's claim of ineffective assistance of counsel based on trial counsel's failure to investigate and challenge DNA evidence through expert testimony.

{¶ 12} At the hearing held on remand, Carswell presented the testimony of Dr. Greg Hampikian, an expert in DNA forensic analysis, and Lorin Zaner, a local attorney experienced in child sexual abuse cases.

{¶ 13} Hampikian testified that although he was retained prior to the trial on this case, he never spoke with the lead defense counsel, he did not testify, and he did not attend the trial. Instead, he spoke with an assistant defense attorney. Hampikian stated that if he had attended the trial, he either would have provided testimony favorable to the defense, or he would have provided information to defense counsel that would have assisted in the cross-examination of Nelsen-Rausch.

5.

{¶ 14} Specifically, Hampikian identified four issues from the trial. First, he was concerned with Nelsen-Rausch's testimony that on the inside of the underwear she found two contributors and "additional data." He testified that the DNA evidence clearly showed at least three contributors, meaning three different people. Second, he was concerned that there was a tear in the underwear that was not described, through which DNA could have transferred from the outside to the inside. Third, he described that saturation could transfer DNA through cloth. Finally, he expressed concern over the State's remarks in closing that there were "gobs" of DNA.

{¶ 15} Carswell also called local defense attorney Lorin Zaner. The trial court recognized that Zaner was "a very accomplished attorney and very experienced." Zaner testified it was his opinion that defense counsel was ineffective for failing to rely on a DNA expert in this case.

{¶ 16} Following the hearing, the parties submitted closing briefs.

{¶ 17} On September 6, 2024, the trial court entered its judgment denying Carswell's petition. It reasoned that Carswell failed to meet either prong of the ineffective assistance of counsel standard. In finding that defense counsel's conduct did not fall below an objective standard of reasonableness, the trial court noted that the defense team consulted with Hampikian. It further noted that defense counsel cross-examined Nelsen-Rausch on the issue of innocent transfer of DNA and there was no evidence presented that the cross-examination was deficient. Finally, it found that Nelsen-Rausch testified on direct and cross-examination that there was a third DNA

contributor on the victim's underwear. Turning to the second prong of the ineffective assistance of counsel standard, the trial court found that Zaner's testimony that the results of the proceedings would have been different "generalizes the alleged deficiency in a way that the Court cannot pinpoint the actual failure."

## II. Assignment of Error

{¶ 18} Carswell timely appeals the trial court's September 6, 2024 judgment, asserting one assignment of error for review:

> 1. The trial court erred when it denied the Petition for Post-Conviction Relief (PCR) after conducting an Evidentiary Hearing.

## III. Analysis

{¶ 19} R.C. 2953.21(A)(1)(a)(i) provides that a person "may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief" if that person "has been convicted of a criminal offense . . . and . . . claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States."

{¶ 20} "A trial court's decision to grant or deny a petition for postconviction relief after an evidentiary hearing is reviewed for an abuse of discretion." *State v. Bunch*, 2022-Ohio-4723, ¶ 25. *See also State v. Gondor*, 2006-Ohio-6679, ¶ 58; *State v. Gregory*, 2024-Ohio-5420, ¶ 47 (6th Dist.). An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980); *State v. Whitfield*, 2024-Ohio-187, ¶ 10 (6th Dist.).

7.

{¶ 21} Here, Carswell argues that his constitutional right to the effective assistance of counsel was violated. "To establish that trial counsel was ineffective, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *Bunch* at ¶ 26, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

{¶ 22} The crux of Carswell's argument is that it was objectively unreasonable for defense counsel to not consult with Hampikian and have him either testify or be present at the trial to provide information helpful to the defense. It is worth noting that while the lead defense counsel did not consult with Hampikian, another attorney on the defense team did. Carswell further contends that a reasonable probability exists that the results of the proceedings would have been different if the jury had heard from Hampikian.

{¶ 23} As to the reasonableness of defense counsel's conduct, the Ohio Supreme Court has commented that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Bunch* at ¶ 39, quoting *Strickland* at 690-691. "Although rare, there are some instances in criminal cases when 'the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence.'" *Id.*, quoting *Harrington v. Richter*, 562 U.S. 86, 106 (2011). It noted that "when the core of a defendant's claim or defense turns on evidence that cannot be properly provided to a jury without the use of expert testimony, the failure to engage experts can also constitute deficient performance." *Id.* at ¶ 40, citing *State v. Herring*, 2014-Ohio-5228, ¶ 73-79, 80.

8.

{¶ 24} In *Bunch*, the Ohio Supreme Court held that Bunch met the standard to be entitled to an evidentiary hearing on his claim that trial counsel was ineffective for failing to engage an expert regarding eyewitness identification. *Id.* at ¶ 52. In that case, the victim did not definitively identify Bunch as the perpetrator in the initial lineup. It was only after seeing his picture in a newspaper article over a week later describing him as a suspect that she became certain that he was her attacker. *Id.* at ¶ 6. Bunch's first attorney secured funds to hire an expert witness regarding eyewitness identification. After that attorney withdrew, however, Bunch's second attorney did not consult with any experts for trial. *Id.* at ¶ 10. Notably, that trial counsel later received a stayed suspension from the practice of law for neglecting a different criminal matter around the same time as Bunch's trial. *Id.* at ¶ 14.

{¶ 25} In concluding that Bunch's trial counsel may have been ineffective, the Ohio Supreme Court distinguished other cases that involved "a trial counsel's choice between eliciting expert testimony through the cross-examination of the state's expert witness or eliciting expert testimony by presenting a defense expert." *Id.* at ¶ 34. *See State v. Nicholas*, 66 Ohio St.3d 431, 436 (1993) ("[T]he failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel."); *State v. Thompson*, 33 Ohio St.3d 1, 10-11 (1987) (trial counsel not ineffective where they "decided not to request the appointment of a forensic pathologist, choosing instead to rely on their cross-examination of the state's expert in order to rebut the evidence of rape"); *see also State v. Hartman*, 93 Ohio St.3d 274, 299 (2001); *State v. Foust*, 2004-

9.

Ohio-7006, ¶ 97-98. It recognized that the State did not have an expert witness for Bunch to cross examine, and "[t]he only way for Bunch's counsel to present expert testimony to the jury regarding the psychology behind eyewitness identification would have been through an expert for the defense." *Bunch* at ¶ 34.

{¶ 26} Here, in contrast, the State presented Nelsen-Rausch as an expert witness and defense counsel had an opportunity to cross-examine her. Importantly, aside from the tear in the underwear, Hampikian's other two concerns with Nelsen-Rausch's testimony were addressed.

{¶ 27} First, despite Carswell's protestations otherwise, Nelsen-Rausch testified that there was DNA from three different people. She testified that she discovered DNA from L.Y. and Carswell and "additional data not suitable for comparison." She explained, however, that "[t]he additional data is not from [L.Y.] or from Andrew, because DNA profile is consistent with them already on that sample, but I can't make any determination where that additional data comes from." Although not expressly stated, the conclusion is clear that if there is DNA that is not from L.Y. or Carswell, it must be from a third person.

{¶ 28} Second, defense counsel explored the issue of transference through saturation with Nelsen-Rausch. She testified that she did not think that it would be likely given that she only uses two or three drops of liquid and does not aggressively scrub the sample, but admitted she "can't know for sure."

10.

{¶ 29} Finally, as to the State's comments regarding "gobs" of DNA made in closing argument, defense counsel objected to that statement at trial. Any suggestion that perhaps the trial court would have sustained the objection if Hampikian had testified is purely speculative.

{¶ 30} In *Strickland*, the United States Supreme Court cautioned that,

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' . . . There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

(Internal citations omitted for readability.) *Strickland* at 689.

{¶ 31} Considering the deference given to defense counsel's performance, and considering the testimony elicited during Nelsen-Rausch's examination, the trial court did not abuse its discretion when it determined that Carswell failed to demonstrate that counsel's performance fell below an objective standard of reasonableness.

{¶ 32} Furthermore, the trial court did not abuse its discretion when it determined that Carswell failed to demonstrate a reasonable probability that the result of the proceedings would have been different. As mentioned above, Nelsen-Rausch testified to

11.

the issues identified by Hampikian. Her testimony revealed that there were three contributors of DNA. She also acknowledged some possibility that Carswell's DNA may have transferred from the outside of the underwear to the inside. Perhaps Hampikian's testimony would have presented those issues more strongly in Carswell's favor, but it is not reasonably probable that his testimony would have resulted in an acquittal.

{¶ 33} Carswell's convictions were not based solely on DNA. And Hampikian was not going to testify that Carswell's DNA was in fact not on every part of the inside of L.Y.'s underwear. Instead, he was only going to provide another explanation for how the DNA got there. But, the other evidence in the case strongly supports the straightforward conclusion that Carswell's DNA was present inside L.Y.'s underwear because he raped her: L.Y. reported the abuse immediately, A.R. described how upset L.Y. was when she told her what happened, and Carswell admitted to police that night that he was spooning with L.Y. and that touching may have been possible although he did not remember it. The trial court's conclusion, therefore, that Carswell failed to satisfy the second prong of *Strickland* and demonstrate prejudice is not an abuse of discretion.

{¶ 34} Accordingly, the trial court did not abuse its discretion when it denied Carswell's petition for postconviction relief following the evidentiary hearing. Carswell's assignment of error is not well-taken.

12.

## IV. Conclusion

**{¶ 35}** For the foregoing reasons, the judgment of the Sandusky County Court of Common Pleas is affirmed. Carswell is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Gene A. Zmuda, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.