[Cite as *State v. Lavender*, 2024-Ohio-229.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230042 |
| | | TRIAL NO. B-1700948 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| ANDREW LAVENDER, | : | |
| | | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause
                        Remanded

Date of Judgment Entry on Appeal: January 24, 2024


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Elizabeth Miller,* Ohio Public Defender, *Patrick T. Clark,* Assistant Public Defender/Managing Counsel, and *Charlyn Bohland,* Assistant Public Defender/Supervising Attorney, for Defendant-Appellant.

**WINKLER, Judge**.

**{¶1}** Defendant-appellant Andrew Lavender appeals the judgment of the Hamilton County Court of Common Pleas dismissing his timely-filed R.C. 2953.21 petition for postconviction relief without an evidentiary hearing. Reviewing the appeal in light of the Ohio Supreme Court's decision in *State v. Bunch*, 171 Ohio St.3d 775, 2022-Ohio-4723, 220 N.E.3d 773, we hold that Lavender was entitled to an evidentiary hearing on six of his 12 claims. Those six claims asserted that his trial counsel was constitutionally ineffective in challenging the eyewitness and informant testimony presented at trial and in investigating and presenting mitigation evidence at sentencing. Accordingly, we reverse the common pleas court's judgment in part and remand this cause for an evidentiary hearing on those six claims. We affirm the trial court's judgment in all other respects.

## Background

**{¶2}** In January 2018, following a jury trial, Lavender was convicted of the aggravated murder of Ceran Lipscomb in violation of R.C. 2903.01(A) and sentenced to life in prison without the possibility of parole. Lavender was a juvenile at the time Lipscomb was murdered.

**{¶3}** The shooting took place outside of a neighborhood park on August 1, 2014, at around 6:00 p.m. The state's theory at trial was that Lavender, a teenager with no significant familial support and desperate for money, became a "hitman," and engaged in murder-for-hire. To support this theory at trial, the state relied on (1) the eyewitness testimony of 15-year-old Dennis Coulter, who had been across the street talking with his cousin at the time of the shooting; (2) the informant testimony of Domingo Johnston, who had overheard Lavender telling others that he was taking a hit on Lipscomb; and (3) Lavender's text messages to others seeking money and his social-media posts of pictures of himself holding guns and/or cash.

**{¶4}** With respect to the eyewitness testimony, Coulter initially described the shooter as a black male in his 20s with blue eyes, a chinstrap beard, and five feet eight inches tall. Although he told police he was a few feet away when the shooting occurred, a picture of the scene admitted at trial showed that he had been standing more than 20 feet away. Almost two weeks after the crime, Coulter identified Lavender from a six-person photo lineup. When asked how confident he was on a scale of one to ten that he had correctly identified the suspect, he responded, "9."

**{¶5}** The state also presented the expert testimony of Dr. John Wixted, whose research centers on the reliability of eyewitness identification. Dr. Wixted testified that a high-confidence identification is a strong indicator of the reliability of eyewitness identification, even if other indicators that affect the reliability or accuracy of an identification are present, such as witnessing a crime from a distance, witnessing a crime where a gun is used (a stress factor), and where the period of time from witnessing the crime to making the first identification is lengthy. In his testimony, Dr. Wixted stressed that the high-confidence factor is the strongest indicator of the reliability of an identification if the eyewitness who expresses high confidence in his identification does so upon his first viewing of a photo lineup and if the lineup is not unduly suggestive; i.e., where the suspect identified did not stand out from the other people pictured in the photo array. Dr. Wixted testified that in his opinion the line-up was not suggestive because it appeared that others pictured in the array also had some facial hair like Lavender's.

**{¶6}** Lavender's defense at trial focused on exposing holes in the murder investigation, which was led by a rookie detective. For example, they point out that the police failed to interview the 911-caller who had reported the crime until more than six months after the crime. The 911-caller had been in a port-o-let when he heard a shot fired. He testified at trial that he came out of the port-o-let and saw a man, who appeared

3

to be in his 40s, running away. When interviewed, the 911-caller said that he would be unable to identify the shooter because too much time had passed since the shooting.

{¶7} In addition to that line of defense, Lavender presented the testimony of an eyewitness-identification expert, Dr. Jonathon Vallano, in an attempt to discredit Coulter's identification of Lavender. Dr. Vallano discussed different factors—distance between the witness and the crime, the presence of a weapon, the duration of the time the witness was able to view the suspect—that affect the reliability of an identification and that specifically affected the reliability of Coulter's identification of Lavender. But Dr. Vallano agreed with Dr. Wixted that a high-confidence identification is typically reliable and accurate unless the photo lineup being viewed is suggestive or unfair. Unlike Dr. Wixted, Dr. Vallano testified that he thought the array was unfair because the only suspect with a chinstrap beard in the photo array was Lavender.

{¶8} Finally, the defense challenged the state's interpretation of Lavender's social-media posts by cross-examining Coulter, who was also a black urban male close in age to Lavender, about Coulter's own, similar social-media posts, and challenged the credibility of Domingo Johnston, the police informant, by cross-examining him on his lengthy history of "snitching" on others in exchange for leniency on criminal charges against him.

{¶9} Ultimately, the jury found Lavender guilty of aggravated murder. The trial court, prior to sentencing Lavender, indicated that it had reviewed the presentence-investigation report and Lavender's sentencing memorandum, and was considering Lavender's "youth as a mitigating factor for purposes of sentencing with the understanding that the imposition of life in prison without parole is not to be entered into lightly and that the Court needs to be aware of the possible Eighth Amendment ramifications for cruel and unusual punishment." The court imposed a life term without the possibility of parole after noting that "murder for hire is a particularly troubling motivation."

4

{¶10} This court affirmed Lavender's conviction and sentence on direct appeal. *State v. Lavender*, 2019-Ohio-5352, 141 N.E.3d 1000 (1st Dist.), *appeal not accepted*, 159 Ohio St.3d 1435, 2020-Ohio-3634, 148 N.E.3d 576. In our opinion, we overruled, among other assignments of error, challenges to (1) the admission of Lavender's text messages and photographs from his Facebook account, holding they were properly admitted for the purposes set forth in Evid.R. 404(B) and that any individual item that may have been improperly admitted, was harmless error, *see id.* at ¶ 13, 47; (2) trial counsel's effectiveness in failing to object to the admission of the photographs, holding that counsel was not ineffective where one of the defense strategies was "to explain away the texts and social media evidence * * * by depicting it as the posturing of a teenager engaged in a segment of urban culture that finds such images and talk admirable" and where defense counsel successfully obtained testimony from the state's eyewitness, Dennis Coulter, admitting that he too had posted pictures similar to Lavender's on social media, even though he was a "positivity" rap artist, *see id.* at ¶ 85; (3) trial counsel's ineffectiveness in failing to present effective mitigation evidence at sentencing, holding that trial counsel's decision to call or not call a mitigation witness was a matter of trial strategy, *see id.* at ¶ 122; and (4) the admission of Coulter's identification of Lavender from the six-person photo array, holding that the photo array was not unduly suggestive even though Lavender's photograph was the only one with a chinstrap beard, *see id.* at ¶ 135.

{¶11} Following his direct appeal, Lavender challenged his conviction and sentence in a timely-filed postconviction petition, raising 12 grounds for relief. Most of the grounds challenged the constitutional effectiveness of trial counsel in investigating the eyewitness and informant testimony, challenging the state's interpretation of Lavender's text messages, and in preparing mitigation evidence for sentencing. On appeal, this court reversed the denial of his petition because the lower

court's findings of fact and conclusions of law did not conform with the requirements of R.C. 2953.21(H) and prevented this court from conducting a meaningful review of Lavender's appeal. *State v. Lavender*, 1st Dist. Hamilton No. C-210151, 2021-Ohio-4274.

{¶12} On remand, the court heard oral arguments on Lavender's request for an evidentiary hearing, but ultimately denied the request and dismissed Lavender's petition. In its findings of fact and conclusions of law, the court, complying with R.C. 2953.21(H), set forth which grounds were barred by res judicata, and which claims were barred for failing to set forth substantive grounds for relief.

{¶13} Lavender now appeals, arguing in two assignments of error that the court erroneously dismissed eight of the 12 grounds for relief without first holding an evidentiary hearing. All eight[1] grounds, which allege that Lavender's trial counsel was constitutionally ineffective, are set forth below:

**Ground Two**. Trial counsel was ineffective for failing to adequately investigate the eyewitness identification claims.

**Ground Three**. Trial counsel was ineffective for failing to interview Lavender's brother, Michael "Duke" Lavender, which hindered counsel's ability to adequately investigate the link between the Lavender family and Domingo Johnston.

**Ground Four**. Trial counsel was ineffective for failing to develop a theory of defense that rebutted or mitigated the state's interpretation of his text messages.

**Ground Six**. Lavender's counsel was ineffective due to cumulative errors.

---

[1] Lavender also states in his appellate brief that he is appealing Ground Seven, which alleges that his trial counsel was ineffective for failing to retain a mitigation specialist. But Lavender does not assign the dismissal of that ground as error. Although not assigned as error, we note that the issues raised in that ground were issues that were encompassed within Grounds Eight through Eleven.

6

**Ground Eight**. Lavender's counsel was ineffective for failing to present the specific sentencing factors in *Miller v. Alabama* [567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d407 (2012)] and *Montgomery v. Louisana* [577 U.S. 190, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016)] and link those factors to Lavender's life.

**Ground Nine**. Lavender's counsel was ineffective for failing to retain and present the testimony of a forensic psychologist as mitigation at the sentencing hearing.

**Ground Ten**. Lavender's counsel was ineffective for failing to conduct a reasonable investigation and failed to present mitigating evidence of the child's history and family background at the sentencing hearing.

**Ground Eleven**. Lavender's counsel was ineffective for failing to present mitigation information about the capacity for change in youth.

### Law and Analysis

{¶14} We review a decision to grant or deny a petition for postconviction relief, including the decision whether to afford the petitioner a hearing, under an abuse-of-discretion standard. *State v. Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, 205 N.E.3d 513, ¶ 38, citing *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 51-52, 58.

{¶15} In his first assignment of error, Lavender argues that the common pleas court erroneously dismissed Grounds Two, Eight, Nine, Ten, and Eleven on the basis of res judicata and, in his second assignment, contends that the court abused its discretion in dismissing all eight grounds at issue in this appeal for failing to set forth substantive grounds for relief. We consider these assignments of error together for ease of discussion.

{¶16} The issue in this appeal is whether Lavender was entitled to an evidentiary hearing on his postconviction claims of ineffective assistance of counsel.

7

{¶17} In *State v. Bunch*, 171 Ohio St.3d 775, 2022-Ohio-4723, 220 N.E.3d 773, the Ohio Supreme Court addressed the standard to be used for determining whether a hearing should be held on a postconviction petition and emphasized that it was only addressing the standard for holding a hearing on a timely-filed postconviction petition and not the standard for ultimately granting relief on the petition. *Id.* at ¶ 22.

{¶18} Under the postconviction statutes, a trial court must, before granting an evidentiary hearing, "determine whether there are substantive grounds for relief." *Id.* at ¶ 23, citing R.C. 2953.21(D). "If the petition 'is sufficient on its face to raise an issue that the petitioner's conviction is void or voidable on constitutional grounds, and the claim is one which depends upon factual allegations that cannot be determined by examination of the files and records of the case, the petition states a substantive ground for relief.' " *Id.*, citing *State v. Milanovich*, 42 Ohio St.2d 46, 325 N.E2d 540 (1975).

{¶19} The *Bunch* court further explained that in determining whether there are substantive grounds for relief, the trial court must consider the entirety of the record from the trial proceedings as well as any evidence filed by the parties in postconviction proceedings. Then, "[i]f the record does not on its face disprove the petitioner's claim," the court is required to "proceed to a prompt hearing on the issues." *Id.* at ¶ 24, citing R.C. 2953.21(F).

{¶20} As noted previously, all the grounds at issue in this appeal assert a claim for ineffective assistance of counsel. To establish that trial counsel was ineffective, a petitioner must show that counsel's performance was deficient, and that the deficient performance prejudiced the defendant. *Bunch*, 171 Ohio St.3d 775, 2022-Ohio-4723, 220 N.E.3d 773, at ¶ 26, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). With respect to the prejudice, the petitioner must demonstrate that there is a "reasonable probability" that counsel's deficient performance affected the outcome of the trial. *Id.*, citing *Strickland* at 694. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.*, citing *Strickland* at

695. The failure to make an adequate showing on either prong is fatal to an ineffective-assistance-of-counsel claim. *See Strickland* at 697; *State v. Daniels*, 2018-Ohio-1701, 111 N.E.3d 708, ¶ 24 (1st Dist.).

**{¶21}** We briefly note that with respect to postconviction petitions asserting grounds for relief based on ineffective assistance, res judicata does not operate to bar those grounds where the petitioner has submitted competent evidence of ineffective assistance outside of the trial record and where that evidence presents substantive grounds for relief. *State v. Blanton*, 171 Ohio St.3d 19, 2022-Ohio-3985, 215 N.E.3d 467, ¶ 33. With respect to Grounds Two, Eight, Nine, Ten, and Eleven, the state concedes that Lavender submitted competent evidence outside the record in support of those postconviction claims but maintains that that evidence did not present substantive grounds for relief.

**{¶22}** We now turn to evaluate each of Lavender's ineffective-assistance claims with respect to whether he should have been granted a hearing on each claim. We reiterate that we are not considering whether there are substantive grounds for relief with respect to the merits of the postconviction petition. *See Bunch* at ¶ 27. Therefore, we are mindful that Lavender's petition "need not definitively establish counsel's deficiency or whether [Lavender] was prejudiced by it [in order to be entitled to an evidentiary hearing]. Instead, the petition must be sufficient on its face to raise an issue whether [Lavender] was deprived of the effective assistance of counsel, and [Lavender's] claim[s] depend[] on factual allegations that cannot be determined by examining the record from his trial." *Id.*

**{¶23}** In a majority of these claims, the state contends that Lavender is simply attempting to relitigate his claims by arguing that his trial counsel should have used different strategies in defending him and discrediting the state's evidence and theory of the murder at trial, and thus, the state contends that Lavender's counsel's performance was not deficient but within the realm of trial strategy. In response, Lavender argues that

trial counsel's actions in failing to present certain evidence cannot be considered trial strategy because any such strategy was the result of an inadequate investigation of the charges and witnesses against Lavender and inadequate preparation for his sentencing hearing. Essentially, Lavender is contending that even if trial counsel's performance could be construed as strategy, it was an unreasonable strategy and thus, a deficient performance. The defendant in *Bunch* raised the same argument as Lavender and in considering that argument, the *Bunch* court concluded that in the context of postconviction litigation, where courts can consider evidence outside the record, "it is possible and appropriate to question whether a trial counsel's decisions were in fact deliberate and strategic and whether strategic decisions were reasonable ones. Trial strategy is usually within the 'wide range of reasonable professional assistance,' but strategy is not synonymous with reasonableness." (Citations omitted.) *Bunch*, 171 Ohio St.3d 775, 2022-Ohio-4723, 220 N.E.3d 773, at ¶ 36. Keeping this in mind, we turn to the specific grounds for relief.

<u>Grounds for Relief—Trial Proceedings</u>

{¶24} <u>Ground Two.</u> Lavender argues that his counsel's performance was deficient in failing to adequately investigate the eyewitness-identification claims, and that even though his trial counsel had believed an expert in eyewitness identification was necessary to attack Coulter's identification, Dr. Vallano's testimony did not go far enough. Dr. Vallano based his opinion on the presumption that the photo lineup was suggestive and unfair without ever objectively evaluating it. Lavender argues that his defense counsel should have utilized a "functional size analysis"[2] of the photo array to demonstrate its suggestiveness. To demonstrate his counsel's deficient performance,

---

[2] Functional size refers to the number of "filler" nonsuspects that are included in the lineup who resemble the suspect or the description of the suspect. We note that no court in Ohio has yet ruled on whether a functional-size analysis is either necessary or admissible to demonstrate the suggestiveness of a photo lineup. We do not reach this issue yet as this is an evidentiary matter to be addressed when considering the merits of Lavender's ineffective-assistance-of-counsel claim.

Lavender presents the affidavit of Carrie Wood, a colleague of Lavender's trial counsel. Wood contacted trial counsel after the hearing on Lavender's motion to suppress Coulter's identification and recommended that he hire an expert to conduct a functional-size analysis of the photo array to objectively demonstrate that the lineup was unfair. She provided trial counsel with a list of experts who might be able to assist in that analysis. Wood attested to the fact that trial counsel acknowledged receiving her email.

{¶25} Lavender also submitted his trial counsel's affidavit in support. Trial counsel attested that he had believed that Dr. Vallano was intimidated by the report of the state's expert, Dr. Wixted, and was reluctant to criticize it because Dr. Vallano considered Dr. Wixted *the* expert in the field of eyewitness identification. Trial counsel stated that he never discussed with Dr. Vallano ways to objectively test the suggestiveness of the photo lineup and he did not "consider consulting additional experts on the issue of lineup fairness" even though that was an issue at trial.

{¶26} To demonstrate prejudice, Lavender submitted the affidavit of Kaitlyn Ensor, M.A., a doctoral candidate in the field of cognitive science whose research focuses on eyewitness identification, and who conducted a functional-size analysis of the lineup that Coulter viewed when identifying Lavender. The functional size of a lineup refers to the number of viable "filler" suspects who resemble the culprit. Ensor pointed to research that demonstrates that a six-person lineup is biased if its "effective size is under 4.80." Ensor conducted the functional-size analysis of the lineup at issue, determined its effective size was 3.50 and was able "to conclude with a reasonable degree of scientific certainty that the lineup was not fair, based on a flawed selection of lineup candidates." Lavender maintains that because the state's eyewitness-identification expert, Dr. Wixted, based his opinion that Coulter's high-confidence identification of Lavender was reliable on the presumption that the lineup was fair, then Ensor's testimony and analysis would have objectively demonstrated the suggestiveness of the lineup and thus, would have impacted the weight given to Dr. Wixted's opinion.

11

{¶27} The state maintains that Lavender has not demonstrated that trial counsel's performance in failing to hire an expert to conduct a functional-size analysis of the lineup was deficient, pointing out that no court in Ohio has determined that failing to conduct a functional-size analysis of a lineup is deficient performance. But here, in this specific case, where the suggestiveness of the lineup was an issue at trial, where each expert's opinion on the reliability of Coulter's high-confidence identification was based on differing presumptions as to whether the lineup was suggestive, and where the evidence submitted shows that Lavender's trial counsel was advised that there was a potential way to objectively test the fairness of the lineup and counsel chose not to do so, Lavender has demonstrated that there is an issue as to whether counsel's performance was deficient, i.e., a reasonable strategy, and the submission of the functional-size analysis performed by Ensor, showing the lineup to be unfair, demonstrates an issue of prejudice. Given that evidence, we cannot say the record on its face disproves Lavender's claim.

{¶28} Because Lavender has submitted evidence to demonstrate that there is an issue whether his counsel was ineffective for failing to investigate issues surrounding eyewitness identification, we hold that the common pleas court abused its discretion in denying Lavender an evidentiary hearing on this claim.

{¶29} Ground Three. Lavender argues that defense counsel was ineffective for failing to interview Lavender's brother, Michael "Duke" Lavender, because it hindered counsel's ability to adequately investigate the link between the Lavender family, the West End community where Lavender lived, and Domingo Johnston. In support, Lavender submits the affidavit of Duke Lavender. Duke attests that he called trial counsel and asked him to visit him in prison because he had information about his brother's case. Lead trial counsel admits in his affidavit that he spoke with Duke but did not follow up with him or visit him in prison. In Duke's affidavit, he explains that he has a longstanding feud with Johnston starting when they were in middle school.

Duke believes that Johnston identified Lavender as the assailant in this case because of his feud with Johnston.

**{¶30}** Lavender argues trial counsel has a constitutional duty to conduct a thorough pretrial factual investigation and did not do so here. He contends that his trial counsel could have used the information from Duke to challenge the state's theory that this was a "murder-for-hire" and to challenge the credibility of Domingo Johnston's testimony that he had overheard Lavender telling others that he was taking a "hit" on Lipscomb. The state argues that Lavender has not demonstrated prejudice because Duke was not credible given his criminal history. However, after reviewing the record, we cannot say that the record disproves Lavender's claim on its face. *See Bunch*, 171 Ohio St.3d 775, 2022-Ohio-4723, 220 N.E.3d 773, at ¶ 24. Although Lavender's trial counsel was able to cross-examine Johnston on his criminal history and his habit of "snitching" on others in exchange for leniency on his criminal charges, trial counsel could have also used the information that Duke provided regarding Johnston's feud with Duke and Johnston's potential grudge against the Lavender family to poke more holes in Johnston's credibility. Given the importance of Johnston's testimony—the police were only able to identify Lavender as a suspect after Johnston had approached police—the failure of trial counsel to further investigate the connection between Duke and Johnston may have been prejudicial to Lavender.

**{¶31}** Upon our review of the record, we hold that Lavender has submitted evidence to demonstrate a potential issue of ineffective assistance for failing to follow up with Lavender's brother, Duke, and thus, the common pleas court abused its discretion in failing to hold an evidentiary hearing on this ground for relief.

**{¶32}** Ground Four. Lavender argues that his defense team was ineffective because they failed to adequately explain or mitigate Lavender's inculpatory text messages. In support, Lavender submits the affidavit of Law Professor Andrea Dennis, whose research has focused on "the ways in which rap lyrics, hip-hop, and more

recently, social media are used as evidence by prosecutors in criminal trials." In her affidavit, Professor Dennis opines that an expert in African-American Vernacular English should have been used to help the jury understand Lavender's text messages. For example, she points to the state's interpretation of Lavender's text that said, "You got some money I can hold." She states that the state provided testimony at trial that that text meant Lavender was "asking for money to have" but Professor Dennis said that text would more correctly be interpreted as asking for money to borrow.

{¶33} Based upon our review of the record, we hold that Lavender has not demonstrated substantive grounds for relief regarding his claim that his counsel was ineffective for failing to present an expert in African-American juvenile sociolect to combat the state's interpretation of his text messages. A review of the whole record demonstrates that defense counsel zealously and effectively contested the state's interpretation of Lavender's text messages and argued that they reflected "the posturing of a teenager engaged in a segment of urban culture that finds such images and talk admirable," *see Lavender*, 2019-Ohio-5352, 141 N.E.3d 1000, at ¶ 85, and effectively elicited Coulter's admission on cross-examination that he too had engaged in social-media behavior similar to Lavender. The evidence Lavender has submitted in support of this postconviction claim does not demonstrate how trial counsel's strategy at trial was unreasonable.

{¶34} Because Lavender has not submitted substantive grounds for relief, we hold that the trial court properly dismissed this claim without an evidentiary hearing.

{¶35} Ground Six. Lavender argues that the cumulative effect of the errors that occurred at trial and alleged in his postconviction petition warrant the grant of a new trial or, at a minimum, an evidentiary hearing on those specific postconviction claims.

{¶36} Under the doctrine of cumulative error, a judgment may be reversed when the cumulative effect of errors deprives a defendant of his or her constitutional

rights, even though the errors individually do not rise to the level of prejudicial error. *State v. Garner*, 74 Ohio St.3d 49, 656 N.E.2d 623 (1997).

**{¶37}** Because we have reversed the common pleas court's decision denying Lavender an evidentiary hearing on Grounds Two and Three in his postconviction petition, we find Ground Six to be moot and will not address it at this time. *See State v. Ibrahim*, 10th Dist. Franklin No. 14AP-355, 2014-Ohio-5307, ¶ 37.

<u>Grounds Eight, Nine, Ten, and Eleven — Sentencing</u>

**{¶38}** The next four grounds all claim that Lavender's trial counsel was constitutionally ineffective in failing to adequately prepare for and present effective mitigation evidence at his sentencing hearing. In Ground Eight, Lavender contends that his trial counsel was ineffective for failing to discuss the traits of youth outlined in two cases from the United States Supreme Court on juvenile sentencing—*Miller v. Alabama* and *Montgomery v. Louisiana*—and then failing to present evidence to demonstrate how those traits played out in Lavender's life.[3] More specifically, Grounds Nine, Ten, and Eleven, respectively, contend that defense counsel was ineffective for failing to present mitigation testimony from a forensic or clinical psychologist, mitigation evidence of Lavender's childhood history and family background, and evidence of the capacity for change in youth and, specifically, Lavender's capacity for change.

**{¶39}** Under these grounds, Lavender maintains that his trial counsel was unfamiliar with the jurisprudence on sentencing juveniles for aggravated murder and the type of evidence necessary to provide the sentencing court with a complete picture

---

[3] *See Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), and *Montgomery v. Louisiana*, 577 U.S. 190, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016), both of which discuss sentencing factors that reflect the "distinctive (and transitory) mental traits and environmental vulnerabilities" of youth. *Miller* at 473. Some of these factors include the character and record of the juvenile; the chronological age of the juvenile and the failure to appreciate risks and consequences; the family and home environment; the way familial and peer pressure may have affected the juvenile; any incompetency associated with youth in navigating the legal system; and the juvenile's potential for rehabilitation.

of Lavender's youth as a mitigating factor. Further, Lavender contends that when his trial counsel reached out to a colleague for help in preparing for the sentencing hearing, counsel then failed to follow through with recommendations to obtain certain evidence. Lavender maintains that his counsel's performance was deficient and prejudiced him because the sentencing court lacked a comprehensive understanding of Lavender's youthful traits and how that may have diminished his culpability in committing the charged offense.

{¶40} In support of these claims, Lavender submits the following evidence: (1) the affidavit of Alexis Kidd, the head of a community center in Lavender's neighborhood, who attested that she would have advocated for Lavender at his sentencing hearing if she had been contacted, that Lavender was "quiet, fun, funny, playful and did not bully others," and that Lavender's mom loved him but was not stable, and she discussed the economic reality of Lavender's life and the deterioration of his neighborhood;

(2) the affidavit of Michael Turner, Lavender's high school principal, who attested that Lavender was on a college trajectory before he was arrested, that he was a "good kid," "always responded appropriately," and was "not a troublemaker";

(3) Lavender's school records, including disciplinary logs that can be construed as supporting Turner's affidavit;

(4) Richard Rothenberg, a clinical psychologist, who interviewed Lavender in 2019 in prison, and discussed in his report the effects of Lavender's chronological age on his ability to appreciate consequences, noting that "a review of [Lavender's] social history is consistent with the previously described research regarding adolescent brain development in that he did not appear to fully appreciate the consequences of his

actions * * * because * * * his prefrontal cortex is still developing"; Lavender's home environment and his inability to escape the negative aspects of that environment; Lavender's inability to assert his rights during the criminal process due to his youth; and Lavender's capacity for change or rehabilitation, noting that Lavender's "records during his incarceration suggest there is the possibility of rehabilitation and there is nothing in his history to suggest he possess irretrievably depraved character";

(5) the affidavit of Carrie Wood, a colleague of defense counsel, attesting that although Lavender's trial counsel was worried about Lavender's potential life-without-parole sentence if convicted, trial counsel did not consult her on preparing for sentencing until after a verdict had been reached at which time she provided trial counsel with a variety of juvenile sentencing material; she advised trial counsel to hire a mitigation specialist and to conduct mitigation interviews with family and friends as well as have a juvenile-brain-development expert interview Lavender;

(6) the affidavit of a junior attorney on Lavender's defense team, who attested that trial counsel did not start preparing for mitigation until after a verdict had been reached and that counsel had been unfamiliar with the jurisprudence surrounding sentencing for juveniles convicted of aggravated murder;

(7) sentencing guidelines for juveniles.

{¶41} The state argues that Lavender's evidence is simply positing an alternative theory of mitigation and that it is insufficient to warrant an evidentiary hearing. We disagree. Lavender's argument is not simply that there was "better" mitigation evidence to present, but that because his trial counsel failed to perform an

adequate mitigation investigation, trial counsel was unable to present effective evidence of Lavender's youth at the sentencing hearing. In the context of postconviction litigation, a defendant may argue lack of preparation and investigation when submitting evidence outside the trial record to support such an argument, *see Bunch*, 171 Ohio St.3d 775, 2022-Ohio-4723, 220 N.E.3d 773, at ¶ 36,  and Lavender has done so here.

{¶42}  After reviewing the entire record, including the evidence presented with the postconviction petition, we hold that the common pleas court abused its discretion in failing to hold an evidentiary hearing on these grounds for relief related to sentencing.  Lavender presented evidence demonstrating that there was an issue whether trial counsel was ineffective in preparing and presenting mitigation evidence at the sentencing hearing. The junior attorney on Lavender's defense team attested that trial counsel did not start preparing for the sentencing hearing until after a verdict had been reached, despite being concerned about the potential life-without-parole sentence for a juvenile offender and having an unfamiliarity with the sentencing jurisprudence. Further, although trial counsel reached out to Woods to help prepare for the sentencing hearing, trial counsel either chose to not follow the advice of Woods or ran out of time, because trial counsel failed to conduct any mitigation interviews with family, friends or community members familiar with Lavender or have an updated clinical psychologist interview completed.  In light of the severity of the sentence that Lavender was facing,[4] evidence of trial counsel's minimal investigation into mitigation raises an issue of ineffective assistance of counsel.

**Conclusion**

---

[4] The Ohio Supreme Court equates a life sentence without the possibility of parole, when imposed upon a juvenile offender, to the death penalty.  *See State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, ¶ 27.

{**¶43**}   Based on the foregoing, we sustain in part Lavender's assignments of error to the extent they assert the common pleas court erroneously dismissed Grounds Two, Three, Eight, Nine, Ten, and Eleven without first holding an evidentiary hearing. Lavender submitted evidence outside the record to raise an issue of ineffective assistance of counsel in challenging the eyewitness and informant testimony and in preparing for and presenting mitigation evidence at sentencing, and thus, demonstrated substantive grounds for relief entitling him to a hearing with respect to these claims.

{**¶44**}   Accordingly, the common pleas court's judgment is reversed in part and the cause is remanded for an evidentiary hearing on Grounds Two, Three, Eight, Nine, Ten, and Eleven.  The lower court's judgment is affirmed in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.


**CROUSE, P.J.,** and **BOCK, J.,** concur.


Please note:

The court has recorded its own entry on the date of the release of this opinion.