**[Cite as *State v. Gebrosky*, 2026-Ohio-1430.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio

        Appellee

v.

John E. Gebrosky

        Appellant

Court of Appeals No. {87}WD-25-053
{87}WD-25-005

Trial Court No. 2022 CR 0096
2021 CR 0388

**<u>DECISION AND JUDGMENT</u>**

Decided: April 21, 2026

\* \* \* \* \*

Paul A. Dobson, Wood County Prosecuting Attorney, for appellee.

John E. Gebrosky, pro se, appellant.

\* \* \* \* \*

**DUHART, J.**

{¶ 1} This consolidated case is before the court on appellant, John Gebrosky's pro se appeal of the June 27, 2024 judgments of the Wood County Common Pleas Court denying his petition for post-conviction relief. For the reasons that follow, we affirm.

# I. Assignments of Error[1]

Assignment of Error Number 1: Trial Court Abused Its Discretion in Finding That Petition Was Not Supported By Evidence That Did Not Exist Or Was Not Available For Use At The Time Of Trial and Applying Res Judicata To Bar The Claims of Ineffective Assistance of Counsel.

Assignment of Error Number 2: Trial Court Erred in Failing To Appoint Counsel To Assist [Gebrosky] In Obtaining The Additional Documentary Evidence, Affidavits, And/Or Depositions Required To Support The … Ineffective Assistance Of Counsel Claims.

Assignment of Error Number 3: Trial Court Erred In Not Granting An Evidentiary Hearing.

## II. Background

{¶ 2} This appeal pertains to two separate criminal cases, which have been consolidated for purposes of appeal. We have briefly set forth the relevant facts of each case. A thorough account of the facts and evidence is set forth in *State v. Gebrosky*, 2024-Ohio-2659 (6th Dist.) ("*Gebrosky 1*").

## A. Wood County Case No. 2021CR0388

{¶ 3} In August 2021, Gebrosky was charged with one count of rape in violation of R.C. 2907.02(A)(1)(b) and (B), a felony of the first degree, and one count of gross sexual imposition in violation of R.C. 2907.05(A)(4) and (C)(2), a felony of the third degree. The charges pertained to allegations that he had sexual contact with his daughter,

---

[1]  We note that Gebrosky's assignments of error listed in the beginning of his appellate brief differ from those listed and argued in the body of his brief. The initial listing did not include the second and third assignments of error listed here and instead contained a different second assignment of error which asserted that the trial court misconstrued the record as it related to the claims presented. The assigned errors set forth here are the errors listed and argued in the body of Gebrosky's brief. We observe that Gebrosky does allege in the body of his brief that the trial court misconstrued arguments made in his petition, and we have addressed these alleged errors when they were applicable.

2.

H.G., in Wood County over Christmas 2016 when she was 11 years old. H.G. did not report the alleged abuse until August of 2020.

{¶ 4} The case was tried to a jury and at trial Gebrosky was represented by attorney Kati Tharp. The State presented the testimony of the following witnesses: H.G.; Anissa, Gebrosky's former girlfriend and the mother of two of his younger children; Detective Israel Garrett, a detective with the Toledo Police Department's special victims unit who first investigated the offenses; Carrie Menchaca, a behavioral specialist; Samuel Young, an inmate who was at the jail with Gebrosky; and, Detective Dustin Glass, a detective with the Perrysburg Township Police Department who received the case from Detective Garrett. Gebrosky then called his mother, Barbara Lewis, to testify and he took the stand in his own defense.

{¶ 5} Relevant to this appeal, H.G. testified to two separate instances when Gebrosky had inappropriate contact with her during Christmas of 2016. In the first instance, Gebrosky was lying on top of her and began rubbing his hands up and down her legs and breathing heavily. This went on for a few minutes and then H.G. got up. Gebrosky commented that what he was doing, or what he was going to do, "would put him in jail for a long time." During the second of the two occurrences, H.G. testified that Gebrosky was massaging her while she lay on her stomach. During this massage, H.G. stated that Gebrosky was lying on top of her, moving himself back and forth and then she felt his hands "move [her] underwear, and then [she] felt something very close to [her] vagina." She assumed it was "either his fingers or his penis." She jumped up before anything entered her vagina. Gebrosky then asked her whether she wanted to play the

3.

food game, which was "a game H.G. and her younger siblings had watched on YouTube where one person is blindfolded and the other person gives them weird food combinations that the blindfolded person tries to identify." *Gebrosky 1* at ¶ 12. During this game, H.G. said Gebrosky put something in her mouth that initially tasted sweet and then later salty and he told her not to bite down. He then put his hand on the back of her head and moved it back and forth. At some point she "bit down a little bit and it made him jump." She "took the blindfold off and he ran into the kitchen, hunched over, holding either his stomach or whatever – or – with a party cup in his hand." According to H.G.'s testimony, at the time, Gebrosky tried to convince her that it was a pepper, but during a conversation later he first told her that it was a dildo, then he told her that "it was him" and "then he tried to take it back and go back to saying that it was a dildo." When asked what was meant by "it was him" she said "[h]e called it his dick."

{¶ 6} Also germane to this appeal, Young, a fellow inmate of Gebrosky's, testified. According to Young, Gebrosky spoke to him about his case. Gebrosky never admitted to any inappropriate conduct, instead contending that his family was setting him up. Young maintained that he and Gebrosky discussed possible ways to combat anomalies in Gebrosky's case and at some point Young became concerned that Gebrosky was going to use his advice to create a false alibi, which caused Young to contact the police or prosecutor.

{¶ 7} Gebrosky testified in his own defense and maintained that "he was surprised by H.G.'s allegations, because when he was released from prison just before the allegations, H.G. was upset that she could not come see him yet." *Gebrosky 1* at ¶ 31. He

4.

also stated that, after the allegations, "he received 'odd' Facebook messages 'just saying sorry, dad, I miss you,' and he was not sure if it was H.G. sending the messages." *Id*.

{¶ 8} Concerning the specific allegations, he asserted that on Christmas Eve 2016 he stayed up wrapping presents. He claimed he was never friends with Young, that he "didn't like him at all." He disputed H.G.'s and Anissa's claim that the family spent Christmas 2016 in Perrysburg, instead maintaining that they stayed in Toledo. He also denied that any of the incidents occurred. While he admitted to massaging H.G., and to playing the food game with her and her brother, he insisted that nothing sexual ever occurred between him and H.G.

{¶ 9} The jury found Gebrosky guilty of both counts.

{¶ 10} After trial, Gebrosky wrote a letter to the court requesting Tharp be removed as his counsel and Tharp filed a motion to withdraw based upon "a complete breakdown in the attorney client relationship." Tharp was released as counsel of record and Attorney Merle Dech was appointed to represent Gebrosky.

{¶ 11} On October 11, 2022, Gebrosky filed a pro se motion for new trial. He filed a pro se supplement to his motion for new trial on December 14, 2022. These motions were discussed at a hearing on February 14, 2023. At issue was whether Gebrosky wanted to represent himself; he decided he did not. Dech discussed Gebrosky's motions and said the following:

> . . . as it goes to the new trial motion, once I explained what Mr. Gebrosky has before himself and before the Court is really not newly discovered evidence because it's things that were in the possession of Mr. Gebrosky and his Counsel at the time, and I think Rule 33 doesn't - - it's not newly discovered. So what I suggested to Mr. Gebrosky is to proffer it

5.

as an exhibit, seal it for appellate purposes only for review for any potential ineffective assistance of Counsel claim at the appellate level.

{¶ 12} When the prosecutor complained that he "didn't know what documents Mr. Dech [wa]s referring to," Dech detailed the documents as follows:

> . . . We have a series of Facebook messages, which, a copy was given to the Government this morning. A two-page document which is a timeline, says timeline. An inmate request, which is for two matters. A letter from Children Services to Mr. Gebrosky dated 7/24/19, and conversation activity within the Wood County jail.

{¶ 13} Dech reiterated that he was filing these documents "for potential review by the Court of Appeals." Dech then filed a motion for new trial, with exhibits, on February 28, 2023. The motion requests "a new trial so that said exhibits may be entered into evidence or in the alternative made part of the court record for appellate review." At the sentencing hearing on March 15, 2023, Dech stated that he had inadvertently failed to include some pages that Gebrosky had given him in the motion for new trial. It was requested that the amended document be filed under seal due to the contents of some of the pages. Dech said he would file the amended document that night. An amended motion for new trial was filed under seal on that same date.[2] The motion for new trial was denied.

---

[2] Gebrosky has repeatedly claimed that this amended motion was never filed. While it is true that the docket did not show the filing until December 17, 2025, the filing was acknowledged in the trial court's order of March 29, 2023, which denied the motion for new trial "filed March 15, 2023 under seal."

6.

## B. Wood County Case No. 2022CR0096

{¶ 14} In March 2022, Gebrosky was charged with one count of rape in violation of R.C. 2907.02(A)(2) and (B), a felony of the first degree, and one count of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A) and (B)(1), a felony of the fourth degree. These charges were based on allegations of sexual misconduct with A.J., who was 14 years old at the time. Although Gebrosky was initially represented in this case by Tharp, prior to trial Tharp was released as counsel and Dech was appointed to represent him.

{¶ 15} This case went to trial beginning February 27, 2023. The State presented the testimony of Anissa, A.J., A.J.'s mother and Detective Garrett. Gebrosky then took the stand in his own defense.

{¶ 16} Relevant to this case, A.J. testified that she met Gebrosky when she was dating Anissa's brother in 2010, when she was 12. After dating Anissa's brother for a year, the relationship ended. However, she continued to see Gebrosky and accepted rides, food and gifts from him. A.J. indicated that whenever she went with him "there were sexual activities involved." She discussed two specific instances. First, there was a time he picked her up, drove for a while and then took her to a secluded, industrial area she was unfamiliar with, and asked her "to touch his penis and kiss him." Initially she refused, but he "told [her] that he wasn't going to take [her] home until [she] did that." Second, she discussed a time she skipped school and went to Cedar Point with Gebrosky during her eighth-grade year. They rode rides, had lunch, and on the way home he told her they needed to make a stop. They stopped at a motel on Woodville Road, which was

7.

by a bowling alley she used to go to when she was a kid. A.J. was shown photographs of the Express Motel and confirmed that that was the motel. In the motel room, according to A.J., Gebrosky "put his penis inside of [her]" despite her telling him that she "wanted him to stop" and that she "didn't want to do this."

{¶ 17} Eventually A.J. was contacted by the police and she spoke to Detective Garrett. A.J. mentioned that Anissa messaged her on Facebook in 2021, but she denied the two were friends and that Anissa had asked her to "lie about getting raped" and she agreed that she would not have lied for Anissa.

{¶ 18} Detective Garrett discussed two interviews he had with A.J. – one on December 7, 2021, and the second on February 4, 2022. He explained that during his investigation, A.J. told him about a time in 2012 that she and Gebrosky were coming back from Cedar Point and they stopped at a motel. She didn't know the name of the motel, but she knew the name of the bowling alley next to the motel, and based on A.J.'s description, he determined that the motel was the Express Motel, located in Wood County. On cross-examination, he admitted he didn't go to the Express Motel regarding the investigation, that his contact was limited to calling to ask about rates, and that he never spoke to anyone regarding whether Gebrosky had checked into the motel.

{¶ 19} Gebrosky testified that A.J. and Anissa were friends and would do things together. He claimed that he never took A.J. to Cedar Point and had never "entered into any kind of intimate relations with her." He said he only gave A.J. rides when Anissa was unavailable. He additionally explained his belief that A.J., Anissa, and H.G. "hatched this plan to frame [him]" and that the girls were lying. He said that "he and

8.

Anissa had a visitation dispute, beginning when he filed for visitation rights in 2019" and he "claimed Anissa withheld his children from him and the 'allegations started happening ... because she changed the order while [he] was in jail, and when [he] came home she – for better lack of a term, these allegations started and she stopped allowing [him] to see the kids immediately.'" *Gebrosky 1* at ¶ 54.

{¶ 20} The jury found Gebrosky guilty of both charges.

### C. Sentencing

{¶ 21} Gebrosky was sentenced in both cases on March 15, 2023. In case No. 2021CR0388, the trial court determined the offenses of rape and gross sexual imposition were not subject to merger. The trial court then imposed a mandatory prison term of ten years to life for the rape offense and a definite prison term of three years for the gross sexual imposition offense. These terms were ordered to be served consecutively.

{¶ 22} In case No. 2022CR0096, the trial court determined the offenses of rape and unlawful sexual conduct with a minor merged, and the State elected to proceed to sentencing on the rape count. The trial court then imposed a mandatory prison term of eight years on the rape offense.

{¶ 23} The sentence in case No. 2022CR0096 was ordered to run consecutively to the sentence in case No. 2021CR0388 with an aggregate prison term of 21 years to life. He was also ordered to register as a Tier III sex offender.

### D. Prior Appeals

{¶ 24} Gebrosky appealed his convictions to this court, arguing that the conviction in case No. 2021CR0388 was against the manifest weight of the evidence and that

9.

evidence of other acts of sexual contact between A.J. and Gebrosky should have been excluded as more prejudicial than probative. *Gebrosky 1* at ¶ 62. We affirmed the trial court's judgments. *Id*. at ¶ 103.

### E. Motions for Post-Conviction Relief

{¶ 25} On April 22, 2024, Gebrosky filed pro se a "Petition to Vacate or Set Aside Judgment of Conviction or Sentence" and a "Motion for Appointment of Counsel" in both cases. The trial court summarily denied the postconviction petitions. Gebrosky appealed. The trial court did not address the motion for appointment of counsel. Gebrosky then filed a second motion for appointment of counsel for the purpose of appealing the trial court's denial of his postconviction petition.

{¶ 26} We reversed the trial court's decisions denying the postconviction petitions and remanded the case to the trial court to make findings of fact and conclusions of law specifically stating the reasons for the denial of relief. Once back at the trial court, Gebrosky was granted leave to amend his petitions.

{¶ 27} He filed, pro se, an amended petition requesting postconviction relief in both cases and additionally filed a new motion for the appointment of counsel.

{¶ 28} With respect to his request for an appointment of counsel, Gebrosky contended that he lacked the skill or knowledge to pursue his right to postconviction relief without the assistance of counsel, and he pointed to "special circumstances" resulting from his incarceration that entitled him to counsel, including: (1) a new Ohio Department of Rehabilitation and Corrections policy that he maintained "results in significant delay in the delivery of incarcerated adults [sic] legal mail" which renders him

10.

unable to meet filing dates, (2) his inability to obtain certain records, (3) he couldn't obtain sworn depositions or affidavits to support his claim, and (4) he was unable to attend hearings.

{¶ 29} In his postconviction petition he claimed ineffective assistance of counsel with respect to his trial attorney in each case, stating that each attorney "failed to investigate the evidence, prepare evidence and witnesses for trial and failed to present favorable evidence needed to adequately engage in the adversarial process and adequately challenge the State of Ohio's case." He attached his own affidavit and numerous exhibits to his petition.

{¶ 30} The trial court denied Gebrosky's request for court-appointed counsel and dismissed his petition for postconviction relief without a hearing. The trial court found that all of Gebrosky's exhibits "did exist or were available at the time of trial" and thus, his claims were barred by res judicata. The trial court also found that Gebrosky misstated the record and that some of the exhibits relied upon by Gebrosky were used at trial, and therefore Gebrosky's arguments were cumulative of evidence already presented. Lastly, the trial court found that some of Gebrosky's arguments were "speculative and merely a 'hypothesis and a desire for further discovery' which is insufficient to rise to 'marginally sufficient evidence.'"

{¶ 31} Gebrosky appealed.

### III. Preliminary Issues

{¶ 32} Gebrosky has raised additional claims in his briefs and in supplemental filings. We have previously stricken the supplemental filings. With respect to his briefs,

11.

we can only address arguments presented in his petition to the trial court.  *State v. Zamora*, 2008-Ohio-4410, ¶ 26 (3d Dist.).  "It is well-settled that appellate courts will not consider issues that are raised for the first time on appeal."  *State v. Hardin*, 2025-Ohio-5446, ¶ 25 (6th Dist.), citing *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 210 (1982).  Therefore, we will not consider any arguments raised by Gebrosky for the first time on appeal.  Similarly, we cannot consider exhibits, including those attached to Gebrosky's briefs, which were not in the trial court record.  *Kobal v. Edward Jones Securities*, 2021-Ohio-1088, ¶ 17 (8th Dist.).

### IV.  Postconviction Procedure

{¶ 33} R.C. 2953.21 allows inter alia, a "person who has been convicted of a criminal offense … and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States" to file a petition asking the court to vacate or set aside the judgment or sentence.  "A postconviction proceeding is a collateral civil attack on a criminal judgment, not an appeal of a criminal conviction.  To prevail, the petitioner must establish a violation of his constitutional rights that renders the judgment of conviction void or voidable."  (Citations omitted.) *State v. Clinton*, 2024-Ohio-4720, ¶ 17 (6th Dist.).

{¶ 34} Petitions for postconviction relief may be resolved in one of three ways: (1) the trial court can summarily dismiss the petition without holding an evidentiary hearing, (2) the trial court can grant summary judgment on the petition to either party who moved for summary judgment, or (3) the trial court can hold an evidentiary hearing on the issues

12.

raised by the petition. *State v. Belton,* 2023-Ohio-294, ¶ 50 (6th Dist.), quoting *State v. Harris*, 2020-Ohio-4101, ¶ 14 (12th Dist.).

{¶ 35} "Before a trial court may grant a hearing on a petition, it must evaluate the petition in the context of the entire record in the case to determine whether the petition alleges 'substantive grounds for relief.'" *State v. Blanton*, 2022-Ohio-3985, ¶ 24, quoting R.C. 2953.21(D). "A petition presents substantive grounds for relief when it contains allegations that are sufficient to state a constitutional claim and the files and records of the case do not affirmatively disprove the claim." *Id.*

{¶ 36} We generally review the denial of an application for postconviction relief for an abuse of discretion. *State v. Allison*, 2024-Ohio-872, ¶ 13 (6th Dist.). However, if a trial court denies a petition by operation of law, such as by application of the doctrine of res judicata, this court's review is de novo. *State v. Willis*, 2016-Ohio-335, ¶ 7 (6th Dist.).

## V. Exhibits Attached to Postconviction Relief

{¶ 37} Prior to our analysis of Gebrosky's claims, we find it helpful to first discuss his exhibits. In support of his petition, he attached the following: his own "Affidavit of Truth and Verity"; a Lucas County Parenting Plan Schedule; a letter from Lucas County Children's Services ("LCCS") which Gebrosky contends is "regarding a time when H.G. had issues with her mother and reported them, the purpose was to show that H.G. report[ed] wrong doings [sic] to her right away, and this letter was a topic John Gebrosky was using for custody of H.G."; a copy of a motion for new trial filed by Dech on February 28, 2023, in case No. 2021CR0388 with handwritten corrections and additions, apparently written by Gebrosky; an order of the trial court in case No. 2021CR0388, also

13.

with numerous handwritten additions, striking Gebrosky's pro se filing on March 6, 2023 in which he requested to supplement the February 28, 2023 motion for new trial; numerous pages entitled "Conversation Activity" showing a history of Gebrosky's comments and requests made in the Wood County Jail; pages of Gebrosky's conversations with H.G. on Facebook Messenger; two Inmate Requests, written by Gebrosky in May of 2022, and the officer's replies to the requests; a "Timeline" which is purported to be a list created by Tharp to show Gebrosky, detailing questions she planned to ask H.G., which Gebrosky alleges she didn't do; a form represented by Gebrosky to be a "rule violation charge, between Young and Gebrosky," dated March 21, 2022, charging Gebrosky with rule violations; handwritten pages represented to be a "trial notebook" where Gebrosky wrote questions he had during trial in case No. 2021CR0388; page 4 of a 5 page police report detailing interviews with A.J. and her mother on December 7, 2021 and December 10, 2021 respectively; a supplemental report made by Garrett detailing an interview with A.J. on February 4, 2022, and an email he received from A.J. on February 7, 2022; a supplemental report made on August 8, 2020 discussing conversations the reporting officers had with H.G. and her mother on August 7, 2020; a Perrysburg Township Police Investigation Report discussing an interview of Young at the jail with handwritten additions presumably by Gebrosky; page 3 of a 5 page Toledo police report discussing A.J.'s case; two pages of therapy records regarding H.G., which were admitted into evidence at trial; and a 32-page handwritten letter from Gebrosky.

{¶ 38} Although all of the exhibits were attached to Gebrosky's petition, and at the end of each claim, he generally states that all of the exhibits "are attached to support the

14.

claim," he only discusses some of the documents in his arguments. We only consider the documents as they are specifically argued by Gebrosky in support of his claims.

## VI. First Assignment of Error

{¶ 39} In his first assignment of error, Gebrosky contests the application of res judicata to his postconviction relief petition. Gebrosky asserts that the trial court abused its discretion in finding that his petition was barred by res judicata on the basis that his petition was not supported by evidence that either did not exist or was not available for use at the time of trial. He concedes that some of his documentary evidence did exist at the time of trial and direct appeal but contends that the trial court ignored his affidavit - which did not exist at the time of trial, and which contained evidence of off-the-record conversations which could not have been presented on direct appeal.

### A. Applicable Law

{¶ 40} According to the doctrine of res judicata, "a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any [claim] that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment." *Blanton*, 2022 Ohio 3985, at ¶ 25, quoting *State v. Perry*, 10 Ohio St.2d 175, 180 (1967).

{¶ 41} This test has been modified in some instances when a petition for postconviction relief is premised upon a claim of ineffective assistance of counsel as the Ohio Supreme Court has recognized that these petitions "pose unique challenges." *Id*. at ¶ 29. In these cases, when a defendant, represented by new counsel on direct appeal, fails

15.

to raise the issue of the competency of his trial counsel, and that "issue could fairly have been determined without resort to evidence dehors the record, res judicata is a proper basis for dismissing [the] defendant's petition for postconviction relief." *Id.* at ¶ 30, quoting *State v. Cole*, 2 Ohio St.3d 112 (1982), syllabus. However, "res judicata does not bar a postconviction ineffective-assistance-of-counsel claim when either (1) the petitioner had the same attorney at trial and on appeal or (2) he must rely on evidence outside the trial record to establish his claim for relief." *Id.* at ¶ 2, citing *Cole* at 113-114. Gebrosky was represented by different attorneys at trial and on appeal.

{¶ 42} As Gebrosky's claims were based on ineffective assistance of counsel, it was not necessary that Gebrosky's evidence did not exist at the time of trial or was not available at trial. The Ohio Supreme Court has held in such cases, "[t]here is no requirement that to overcome a res judicata bar, the evidence on which such a claim is based must have been unknown or unavailable to the defense at trial."[3] *Blanton* at ¶ 60.

## B. Applicability of Res Judicata

{¶ 43} Gebrosky attached numerous documents to his petition for postconviction relief. Many of the documents were in the trial court record at the time of appeal. However, there were a few exhibits he attached and referred to that were not in the trial

---

[3] It is not clear that the trial court correctly applied this test. At one point the trial court notes that res judicata applies in ineffective assistance of counsel cases when "the petitioner has a new attorney on appeal and the claim could have been litigated based on the trial record." However, the trial court also stated that "claims in the 'petition for postconviction relief must be supported by . . . evidence [that] *did not exist or was not available for use at the time of trial*" and concluded that Gebrosky's "exhibits did or were available at the time of trial." (Emphasis in original.)

16.

court record.  These documents include Gebrosky's affidavit and the pages of police reports.[4]

{¶ 44} "A postconviction claim of ineffective assistance of counsel that relies upon competent evidence outside the record is "generally * * * sufficient, if not to mandate a hearing, [then] at least to avoid dismissal on the basis of res judicata."

{¶ 45} We first note that two of Gebrosky's claims do not rely on any evidence outside of the record.  First, Gebrosky claims that he spoke with Tharp about concerns he had with Young's potential testimony, and Tharp informed him Young's testimony might be introduced at trial and that "she would object to his testimony being introduced if it wasn't more probative and prejudicial," and that despite this, Tharp "failed to object on the grounds that [they] discussed."  Gebrosky insists Tharp should have objected and requested a curative instruction because Young's testimony "was clearly more prejudicial than probative."  Although he mentioned this in his affidavit, stating that Tharp discussed with him "the possibility of Samuel Young being called and the testimony that would be objected to if presented and the reasons why the testimony would be objected to," both in his brief and in his affidavit, his argument is that Tharp failed to object to testimony in the record.  "'To overcome the res judicata bar, evidence offered [outside] the record

---

[4]    The police reports were filed in the trial court on April 9, 2024, as exhibits to his first postconviction petition.  However, as Gebrosky filed his appeal on April 10, 2023, we have not considered these to be part of the trial court record on direct appeal.  Additionally, Gebrosky's 32-page letter was not in the trial court record when his appeal was filed, but this letter was not cited by him in support of any of his claims, and thus his claims do not rely upon this document and we have not considered it for purposes of this appeal.

17.

must demonstrate that the petitioner could not have appealed the constitutional claim based upon information in the original record.'" *State v. Hardin*, 2025-Ohio-5446, ¶ 18 (6th Dist.), quoting *State v. Lewis*, 2019-Ohio-3031, ¶ 14 (3d Dist.). All relevant information relating to his claim that Tharp failed to object to testimony was in the trial court transcript and thus could have been raised on direct appeal. Gebrosky's affidavit does not add any salient evidence regarding this claim. Therefore, we find the trial court properly found this claim to be barred by res judicata.

{¶ 46} Second, Gebrosky claims that Dech failed to file a motion for new trial in case No. 2021CR0388. He does not rely on any evidence outside of the trial court record in support of this claim, and thus, we find the trial court correctly found it to be barred by res judicata.

{¶ 47} With respect to Gebrosky's remaining claims of ineffective assistance, his affidavit discusses communications with both Tharp and Dech relating to these claims. We have previously found that a claim regarding communications "between a defendant and his trial counsel is not one that can be borne out by the record [because] [i]t relies upon information necessarily outside the record." *State v. Allison*, 2024-Ohio-872, ¶ 22 (6th Dist.), quoting *State v. Lawson*, 2020-Ohio-6852, ¶ 106 (2d Dist.). As Gebrosky's remaining claims rely upon evidence outside the trial court record, we find that the trial court erred in concluding that the petition was barred by res judicata. Accordingly, his first assignment of error is found not well-taken with respect to his claim that Dech was ineffective in failing to file an amended motion for new trial and his claim that Tharp

18.

should have objected to Young's testimony and found well-taken with respect to his remaining claims.

{¶ 48} Although we have found the trial court erred in barring some of Gebrosky's ineffective assistance of counsel claims on the basis of res judicata, the trial court's judgment may ultimately be correct. "The Ohio Supreme Court has mandated a two-part inquiry for courts to use when evaluating a postconviction claim that is premised upon an allegation of ineffective assistance of counsel. First, the court must conduct a res judicata analysis to determine whether the petitioner has introduced competent evidence of ineffective assistance that was not included in the trial court record. If so, the court must determine if that evidence presents substantive grounds for relief; 'that is, if believed, would the newly presented evidence—together with any evidence in the trial record—establish that counsel was ineffective?'" (Internal citations omitted.) *Id.* at ¶ 19, quoting *Blanton*, 2022 Ohio 3985, at ¶ 33-34. The Ohio Supreme Court "cautioned that courts often 'conflate' these two inquiries but the 'better practice is to treat [them] as analytically distinct.'" *Id.*, quoting *Blanton* at ¶ 34. As Gebrosky's third assignment of error considers this second inquiry - whether the evidence presents substantive grounds for relief - we will consider his third assigned error next.

## VII. Third Assignment of Error

{¶ 49} In his third assignment of error, Gebrosky takes issue with the trial court's failure to hold a hearing on his petition. He claims the failure to hold a hearing violated his rights to substantive and procedural due process, and had a hearing been held, he would have been entitled to appointed counsel who would have been able to obtain

19.

additional documentary evidence, including A.J.'s attendance records and records from the Express Motel.

### A. Applicable Law Regarding Ineffective Assistance of Counsel

{¶ 50} To establish ineffective assistance, Gebrosky must "(1) show that counsel's performance 'fell below an objective standard of reasonableness' as determined by 'prevailing professional norms' and (2) demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Wilks*, 2018-Ohio-1562, ¶ 140, quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). When the issue is whether to grant a hearing on a postconviction petition, rather than as to the merits of the postconviction petition, the postconviction petition does not need to definitively establish that trial counsel was deficient, or that Gebrosky was prejudiced. *State v. Bunch*, 2022-Ohio-4723, ¶ 27. Instead, Gebrosky's petition must be sufficient on its face to raise an issue as to whether he was deprived of effective assistance of counsel, and that his claim depends on factual allegations that cannot be determined by examining the trial court record. *Id*.

### B. Case No. 2021CR0388

{¶ 51} In his petition, Gebrosky contended that Tharp was ineffective in that she "failed to investigate the evidence, prepare evidence and witnesses for trial and failed to present favorable evidence needed to adequately engage in the adversarial process and adequately challenge the State of Ohio's case." Although in his petition he claimed that Tharp failed to use recorded interviews and that "[t]he recorded interviews and their inconsistencies clearly indicated that the statements made by the alleged victim were

coerced or otherwise influenced by outside parties as the case progressed," in his appellate brief, he explains that the trial court misconstrued these allegations as a claim that Tharp had failed to use recorded interviews when "[t]he actual claim was that [Tharp] had begun certain lines of questioning and then failed to follow through with those lines of questioning and that continuing those lines of questioning were critical to showing that the story being told had continually evolved."[5] He also asserted that "attorney Tharp failed to present evidence that the victim had a significant history of reporting perceived wrongdoings to her immediately countering the State's claims of delayed disclosure." He cited to the LCCS letter as support for this contention.

{¶ 52} Gebrosky also maintained that Tharp failed to follow through on questions to H.G. regarding her changing stories and the effect her meetings with the prosecution and its investigators had on her testimony. He contended that "[c]ontinued questioning on th[is] subject would have likely led to an admission that the prosecution or their investigators manipulated the victim to change her stories in order to support the case they wanted to present." He pointed to Detective Garrett's supplemental reports as evidence of this alleged manipulation.

---

[5] Because Gebrosky has stated that his claim is not based on the failure to use interviews, we have not further addressed this claim. However, we do note that no recorded interviews were provided as evidence for the postconviction relief petition. The only recorded interviews were those admitted at trial or proffered as an exhibit at trial for purposes of appeal. Thus, any claim regarding the recorded interviews would have been barred by res judicata.

21.

**{¶ 53}** Also relevant to this claim was Gebrosky's affidavit, which states, in relevant part:

> 1.) I repeatedly informed attorney Kati Tharp that the allegations related to Case No. 2021CR[0]388 were motivated by the ongoing custody dispute between myself and Anissa Diaz (Alleged victim[']s Step Mother) and that the allegations could be easily disproved by obtaining certain records showing that [the] alleged victim was not living or visiting with me at the time she claimed these events occurred. These records were 1.) the Lucas County Juvenile Court Parenting schedule showing the visiting times I was allowed, 2.) a letter from [LCCS] regarding one of the times alleged victim had issues with her mother related to less serious issues than the alleged events in this case, 3. [sic] Facebook messages between myself and alleged victim, and other messages from the listed time frame.
> . . .
> 3.) Despite my continued requests to do so, attorney Tharp failed to question the alleged victim in case number 2021CR0388 about the number of times she met with the prosecution or their investigators, her continuously changing stories and the effect of these meetings . . . on her continuously changing stories.
> 4.) Attorney Tharp did begin questioning the alleged victim about these issues but changed her course of questioning and failed to return to ask the relevant questions about whether or not she was influenced by the prosecution during her many meetings with them.

**{¶ 54}** After reviewing Gebrosky's new evidence as well as the evidence in the trial court record, we do not find that Gebrosky has raised an issue as to whether Tharp was ineffective in not further questioning H.G. Gebrosky was "required to raise in his petition a triable issue of fact, supported by evidence outside the record, whether his trial counsel was deficient and whether that deficiency prejudiced him." *Bunch*, 2022-Ohio-4723, at ¶ 37. His evidence "must show that trial counsel's actions were not reasonable 'under prevailing professional norms,' and that 'there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt,'" (Internal citation omitted.) *Id*., citing *Strickland* at 688, 695. Here, even assuming the

22.

statements in Gebrosky's affidavit are true, we do not find that they support his assertion that Tharp was ineffective in her questioning of H.G. and that this failure was prejudicial.

{¶ 55} Gebrosky claims that H.G.'s allegations were motivated by the custody dispute and by H.G.'s meetings with the prosecutors, and in his affidavit he contends that he informed Tharp that she could prove that this was the case by obtaining and relying upon: the visitation schedule, the LCCS letter, the Facebook messages between H.G. and Gebrosky, and the supplemental police report, and by further questioning of H.G. We first note that none of the documents relied upon by Gebrosky specifically establish H.G.'s motivations. Moreover, as the trial court concluded, the evidence Gebrosky claims that Tharp failed to use was either used at trial or was cumulative to other evidence used at trial. "Finding an item outside the record to attach to a petition does not turn an issue into a substantive post-conviction claim where it is essentially cumulative to evidence that was in the record on a topic that could have been raised on direct appeal." *State v. Boyd*, 2023-Ohio-4725, ¶ 41 (7th Dist.).

{¶ 56} With respect to the visitation schedule, there was testimony at trial regarding when H.G. would visit Gebrosky. This document does not add anything of significance as it is not specific evidence of the schedule followed over the 2016 Christmas holiday. The document itself allows the parties to change the schedule by agreement, and, in fact, Gebrosky appears to have changed some of the terms himself in the exhibit presented. In the context of the winter break, he crossed out Mother and added Father, changed 10:00 p.m. to 9:00 p.m. and changed Father to Mother.

23.

{¶ 57} Regarding the LCCS letter and the Facebook messages, the relevant information Gebrosky contends Tharp failed to raise was, in fact, brought up at trial. For instance, as to the incident discussed in the LCCS letter, H.G. testified on direct examination that she got into a fight with her mom in 2019 that got physical and LCCS got involved the next day, and she admitted that, at that time, she didn't want to live with her mother and that as a result, she "got involved in some counseling." Tharp also questioned H.G. about the "CSB incident" where her "mom was physically abusive." Similarly, Tharp questioned H.G. about the Facebook messages, asking if she remembered messaging Gebrosky in 2020 "about wanting to come over and spend more time with him," to which H.G. responded "With his two other kids, yes."

{¶ 58} As to the supplemental police report, the facts stated in the police report are not significantly different from those testified to by H.G. at trial. The year she alleged it happened was different, but that was discussed at trial. The events themselves, as discussed in the police report, were very similar to those discussed at trial. The report states that the relevant events happened at Christmas time, that Gebrosky gave H.G. massages and rubbed her inner thighs, and that they played the food game where she was blindfolded and Gebrosky inserted an object into her mouth that had liquid on it which tasted salty. He takes issue with a statement that the object "was or could have been" his penis, whereas at trial she testified that she knew it was his penis because sometime thereafter, at one point, he admitted it was. Gebrosky's argument is that Tharp failed to ask more questions of H.G. However, Tharp did ask H.G. if she told the police about her conversations with Gebrosky regarding what happened and she said she didn't know. We

24.

do not find that these inconsistencies are material and raise an issue was to whether, if Tharp had questioned H.G. more about the facts in the report, that the result of the proceeding would have been different.

{¶ 59} Tharp also questioned H.G. about the amount of times she met with the prosecutor and H.G. agreed it was somewhere around four or five times. Any suggestion that further questioning "would have likely led to an admission that the prosecution or their investigators had manipulated" H.G. is mere speculation and not supported by any evidence provided by Gebrosky.

{¶ 60} For the above reasons, we do not find that Gebrosky's petition raises an issue that Tharp was deficient in her questioning of H.G., or that such deficiency prejudiced his defense. Accordingly, with respect to Gebrosky's allegations pertaining to H.G.'s testimony, we do not find that the trial court erred in denying Gebrosky's petition without a hearing.

### C. Case No. 2022CR0096

{¶ 61} With respect to this case, Gebrosky asserts that Dech misled him as to how the case would proceed, told Gebrosky "that he would obtain records from the hotel where [A.J.] was claiming that the alleged conduct occurred," and "refused to talk about the interviews done with A.J." and Garrett's supplemental reports.

{¶ 62} He first claims that Dech was ineffective in failing to obtain records from A.J.'s school and the motel that she testified they went to together. He believed that the trial court misconstrued this claim, and that he was actually claiming that "it was ineffective assistance of trial counsel . . . when he failed to obtain the Hotel registry

information concerning the check in-check out information . . ."  In support of this claim, Gebrosky provided his affidavit, which states:

> 5) I repeatedly informed attorney Merle Dech Jr. that the allegations related to Case No. 2022CR0096 could be easily disproven by collecting the following evidence[:] 1.) Records from A.J.'s [s]chool showing that she was present for all classes and other school activities during the time these allegations were being claimed to have occurred, 2.) Records from the Express Motel on Woodville Road, next to a bowling alley, and thus are not barred by the doctrine of res judicata.
> 6.)  I repeatedly informed attorney Merle Dech Jr. that the allegations relating to Case No. 2022CR0096 were part of a coordinated effort to get me out of the picture and dispose of my ongoing custody dispute with [H.G.]'s Step[]mother.
> 7.)  In conversations with attorney Merle Dech Jr., he continuously claimed that he would obtain the records from the motel and school.

{¶ 63} We do not find that Gebrosky's petition is sufficient on its face to raise an issue as to whether he was deprived of the effective assistance of counsel.  He has provided this court with no evidence that these records exist, or that, if they did, they would support his claims.

{¶ 64} Lastly, Gebrosky takes issue with Dech's failure to discuss the interviews done with A.J., which he supports with three pages from what appear to be two separate police reports.  Two of the pages appear to be pages 3 and 4 of a 5-page police report. Page 3 contains information that the authoring detective was informed by a Wood County prosecutor that A.J. was a possible victim of Gebrosky, and page 4 contains a summary of a 12/7/2021 interview with A.J. as well as a partial summary of a 12/10/2021 interview with A.J.'s mother.  The third page states that it is page 1 of 1 and it details a 02/04/22 interview with A.J.

26.

{¶ 65} We do not find that these reports raise an issue as to whether Gebrosky was deprived of the effective assistance of counsel. Gebrosky claims the reports show inconsistency as "in interview one she says things took place between Mr. Gebrosky on Cedar Point Road after leaving Maumee Bay State park, then later at a hotel in Oregon Ohio . . . then her story changes completely in second interview with Det. Garret[t] to Mr. Gebrosky getting her from school, then going on a Cedar Point trip, that ended at the Ex[]press Motel in Northwood." A review of the reports does not show a glaring inconsistency. In the first report A.J. mentions multiple occasions, and states both that Gebrosky "would take her out on Cedar Point Road towards Maumee Bay" and also a time at a hotel "on Woodville Road by a bowling alley right before the highway." This second description fits the Express Motel testified to at trial. In the summary of the February 4, 2022 interview, the detective asks for more details, and she again references numerous locations, including "a hotel that was off of Woodville Road, next to the highway" and that there was a "bowling alley next to it." The detective then learned that the hotel A.J. described was the Express Motel. A.J. also added additional details during this second interview – that she had skipped school and Gebrosky took her to Cedar Point and then, after Cedar Point, took her to the hotel. These reports are consistent with each other, and with A.J.'s testimony at trial.

{¶ 66} For the above reasons, we do not find that Gebrosky's petition raises an issue that Dech was deficient in his representation of Gebrosky, or that such alleged deficiency prejudiced his defense. Accordingly, with respect to Gebrosky's allegations

27.

pertaining to Dech's representation, we do not find that the trial court erred in denying Gebrosky's petition without a hearing.

{¶ 67} We therefore find Gebrosky's third assignment of error not well-taken.

## VIII.  Assignment of Error No. 2

{¶ 68} Gebrosky claims that the trial court erred in denying his motion for appointment of counsel.  While he concedes that he does not have a constitutional right to an attorney, he contends that, "pursuant to R.C. 120.16(A)(1) and (D), an indigent petitioner is statutorily entitled to representation by a public defender on a post-conviction petition if the public defender concludes that the issues raised by the petitioner have arguable merit."

{¶ 69} "[A]n indigent petitioner has neither a state nor a federal constitutional right to be represented by an attorney in a postconviction proceeding." *State v. Crowder*, 60 Ohio St.3d 151, 152 (1991).  However, when "a trial court finds a petitioner is entitled to a hearing on a petition for postconviction relief, R.C. 120.16(A)(1) and (D) implicitly require the trial court to promptly notify the public defender of the pending hearing." *State v. Wood*, 2025-Ohio-2170, ¶ 77 (2d Dist.), citing *Crowder* at paragraph two of the syllabus.  The "trial court's duty to notify the public defender's office of the pendency of a petition for post-conviction relief only arises when, and if, the petition is scheduled for an evidentiary hearing."  *Id*. at ¶ 78, quoting *State v. Singleton*, 2006-Ohio-4522, ¶ 30 (2d Dist.).  Then, "[p]ursuant to R.C. 120.16(D), the public defender may, within his discretion, represent or refuse to represent an indigent petitioner seeking post-conviction relief."  *Id*. at ¶ 77, quoting *State v. Simons*, 2013-Ohio-3654, ¶ 35 (2d Dist.).

**{¶ 70}** As we have concluded that the trial court did not abuse its discretion in finding that Gebrosky was not entitled to a hearing on his petition, we thus find that Gebrosky was not entitled to public defender engagement nor appointed counsel. Therefore, Gebrosky's second assignment of error is not well-taken.

## IX. Conclusion

**{¶ 71}** The judgments of the Wood County Court of Common Pleas are affirmed. Pursuant to App.R. 24, John Gebrosky is hereby ordered to pay the costs incurred on appeal.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J. _____

_____
JUDGE

Myron C. Duhart, J. _____

Charles E. Sulek, J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.